ETTA M. REINEMAN (Renneman) and ISAAC REINEMAN v. MAMIE LARKIN, J. S. LARKIN and DAVID MORAN, Appellants.

### Division One July 1, 1909.

1. **DEATH OF APPELLANT: Revivor.** On the death of one of a number of appellants, a cause may proceed on appeal without a revivor.

2. **BILL OF EXCEPTIONS: Interlocutory Decree: Term Bill: Dower.** Exceptions die with the term unless their life is preserved by a bill of exceptions filed during the term or afterwards by leave then granted. So that where plaintiff was adjudged at one term to have dower in certain lands and commissioners were appointed to admeasure and set off the same, and at the next term they reported and their report was approved, and thereupon evidence was put in on the question of her damages and final judgment was then rendered, but at the former term when she was adjudged to be entitled to dower no motion in arrest or for a new trial was filed, and the evidence upon that issue was not preserved by a bill of exceptions filed at that term, or afterwards by leave then granted, that issue, though a bill of exceptions containing the evidence is timely filed after the final judgment awarding damages, is not for review on appeal; and hence the court cannot consider the question whether or not plaintiff was the lawful wife of the deceased intestate. Defendants were not entitled to appeal from the interlocutory decree adjudging plaintiff entitled to dower, but only from the final judgment, but such an appeal does not bring up the evidence at the trial resulting in the interlocutory judgment at the former term, unless both such evidence and the exceptions thereto are preserved in a timely term bill of exceptions.

3. **DOWER: Judgment: Whole Tract.** A judgment for dower which awards to the widow a writ of possession for the whole tract owned by the deceased intestate is self-evidently erroneous. It should award her only the part admeasured and set off to her by the report of the commissioners.

4. **———: ———: Damages: General.** The judgment for damages in the dower suit should not be a personal judgment against defendants; the execution for damages should be awarded only against the estate in which dower has been assigned.

5. **GUARDIAN AD LITEM: Appointment: Perfunctory.** The appointment of a guardian *ad litem* to represent a minor defendant, is not a mere technical matter, nor are his duties merely perfunctory or shadowy. He is to do for the minor, without experience and personally under legal disability, what with riper judgment he would do for himself.

6. ———: ———: **Consent: Waiver: Filing Answer.** The guardian *ad litem* should be notified of his appointment and should file his acceptance of the office in writing. But his acceptance in writing may be waived by him by an acceptance of the office in fact, which may be made manifest by a record showing that he entered upon the performance of his duties and performed them under the eye of the court, such as his appearance in the suit and the filing of an answer for the minor. But where W. S. Anthony was appointed guardian *ad litem* for the minor child and the only child of deceased intestate, in a suit by the widow for dower, in which there were other defendants, and there is nothing in the record showing that he ever heard of his appointment, and all the record shows of his acceptance is that a firm of attorneys styled "Smith and Anthony" filed an answer to the first petition before the appointment of a guardian *ad litem*, and after the appointment the same firm filed an answer for all the defendants, uniting another attorney with themselves, it cannot be held that there was either notice or written acceptance of the appointment, or consent to serve, or waiver of written acceptance, by W. S. Anthony; and the judgment against the minor, on her appeal, these matters being apparent on the face of the record proper, will be reversed, although there was no timely bill of exceptions.

7. **DOWER: Sufficient Pleading: Damages.** The statute (Sec. 2955, R. S. 1899) contemplates that under certain contingencies damages for the deforcement of dower do not begin to run until demand is made. So that in a suit by the widow for the admeasurement of dower and for damages for deforcement, the petition should allege that those defendants who are the children of the deceased intestate inherited as his heirs, and there should be averments as to the interests of the other defendants; but if the petition is aided by reasonable inferences in these respects, it will not be held insufficient after verdict.

Appeal from St. Francois Circuit Court.—*Hon. Robt. A. Anthony,* Judge.

REVERSED AND REMANDED.

*Wm. H. Clopton* and *W. S. Anthony* for appellants.

(1)   (a)  The petition does not describe the land with such certainty that a writ of possession would enable the officer to execute it.   (b)  It does not define the interests of defendants.  Sec. 2933, R. S. 1899, provides that dower in leasehold estates for a term of twenty years or more shall be granted and assigned as in real estate; but for a term less than twenty years shall be granted and assigned as in personal property.  The petition should describe with particularity the estate of the husband.  Garrison v. Young, 135 Mo. 203.  By parity of reasoning the estates of defendants holding with or under the husband should be particularly described.  The estate may have been alienated by the heir, in which case the widow could recover damages only from the time of demanding her dower.  There is no evidence that dower was ever demanded of defendants J. S. Larkin and David Moran.  (c)  The petition fails to state whether Andrew Larkin died intestate.  Sec. 2948, R. S. 1899. (2) No guardian *ad litem* for the minor defendant was appointed as required by the statute.  Secs. 558, 559, and 560, R. S. 1899, must be construed together as one act.  After service of process on an infant defendant a guardian *ad litem* should be appointed before any further steps are taken in the case.  Wells v. Wells, 144 Mo. 198; Rush v. Rush, 19 Mo. 441; Neenan v. St. Joseph, 126 Mo. 89; Charley v. Kelly, 120 Mo. 134; Fisher v. Seickman, 125 Mo. 165; Campbell v. Gas L. Co., 84 Mo. 366; Shaw v. Gregiore, 41 Mo. 414; Wass v. Coudry, 102 Mo. App. 65.  The fact that Mr. W. S. Anthony continued to act as attorney for all the defendants (the infant included) after the court appointed him guardian *ad litem* of the minor does not estop the minor from the defense that she appeared by attorney and not by guardian *ad litem.*

Estoppel does not affect minors. Campbell v. Laclede
G. Co., 84 Mo. 368. Mr. Anthony by appearing as her
attorney could not waive the necessity of his assent to
act as guardian *ad litem*, and the necessity of his ap-
pearance as guardian *ad litem*, in the answers and
appearances made after his appointment. A guar-
dian *ad litem* cannot waive anything. Collins v.
Trotter, 81 Mo. 275; Revely v. Skinner, 33 Mo. 101.
(3) The judgment is erroneous because it decrees
that the plaintiff be put in possession of all the lands.
Orris v. Elliott, 65 Mo. App. 100; Jones v. Hart, 60
Mo. 351; Hall v. Lane, 123 Mo. 633; Harber v. Railroad,
32 Mo. 423; 1 McQuillin's Pl. & Pr., sec. 889. (4) The
evidence shows that plaintiff was never divorced from
James Clinton. Her petition failed to state that she
was a resident of the State of Missouri or of the
county of Reynolds, at the time the suit was filed,
nor did the decree find that she was a resident of
the State or county of Reynolds. Such jurisdictional
facts must be averred or the decree is void and may
be attacked collaterally. Pate v. Pate, 6 Mo. App. 49;
Wertz v. Wertz, 11 Mo. App. 26; Gant v. Gant, 49
Mo. App. 3; Smith v. Smith, 48 Mo. App. 612; Hinkle
v. Lovelace, 204 Mo. 208; Hope v. Blair, 105 Mo. 85;
Wyeth v. Lang, 54 Mo. App. 147; Andrews v. An-
drews, 176 Mass. 92.

*D. L. Rivers* for respondents.

(1) Between the courts of general jurisdiction
and courts of limited jurisdiction there is a broad and
well-settled distinction everywhere recognized and no-
where disputed. In support of the regularity and
binding effect of judgments and decrees of courts of
general jurisdiction, every presumption is to be in-
dulged. The courts will presume that everything was
done that was necessary to be done to make a valid
judgment or decree, where the court has jurisdiction

of the parties to the suit and of the subject-matter of the action. Const., art. 6, sec. 13; R. S. 1899, sec. 2922; Gilman v. Hovey, 26 Mo. 288. (2) The divorce statute does not prescribe what facts shall be alleged in the petition. This is determined in a divorce suit, just as it is determined in any other civil action, by the rules of pleading. Neither section 2922, nor section 2924, nor any other section, prescribes the form of pleading. They prescribe facts to be proved, and relate to a question of evidence only, and not of pleading. This omission is also cured by the Statute of Jeofails. It was designed expressly to prevent the alarming consequences which would ensue if a defective statement of a cause of action were held to vitiate judgment of a court of general jurisdiction, and render it null and void. Sec. 672, R. S. 1899. It is not necessary to allege intestacy. (3) The guardian *ad litem* for Mamie Larkin was appointed by the court as provided by the statute. Sec. 558, R. S. 1899. Whatever the court may think of the judgment against the infant, Mamie Larkin, it must stand good as to the other parties. Horten v. Nation, 126 Mo. 97; State ex rel. v. Tate, 109 Mo. 265. (4) The error of the clerk in entering the judgment of the court on the report of commissioners is a clerical one, and does not vitiate the judgment. This court is authorized to enter the proper judgment. R. S. 1899, sec. 673; Hogan v. Moberly, 131 Mo. 19.

LAMM, P. J.—The plaintiff, Etta, whose name appears as Etta Larkin Renneman and as Etta Reineman (and in several other forms) in this record, is the wife of Isaac Renneman, or Reineman, and, claiming to be the widow of Andrew Larkin, sues for dower in certain real estate in St. Francois county of which Andrew died seized of an estate of inheritance—Lot 1, northwest quarter, section 6, township 35, range 4, being the *locus in quo.*

At a certain term of the St. Francois Circuit Court she was adjudged such dowress and entitled to have assessment of damages, and commissioners were appointed to admeasure dower. At the next term the commissioners reported, setting off to her five and eight-tenths acres as dower land, said parcel being described by metes and bounds and as part of lot one of the northwest quarter of section 6, aforesaid. Said report was approved at the next term, and thereupon evidence was heard on the question of damages and the issues found for plaintiff, assessing her damages at $100.

The concluding part of the final judgment reads: "It is therefore adjudged by the court that the plaintiff have and recover of and from the said defendants the said sum of one hundred dollars, her damages so assessed, and that she have execution therefor; and it is further ordered and adjudged that the plaintiff be and she is hereby awarded writ of possession according to the report of the commissioners, and that is to say that she is put in possession of the following part of said lands assigned by said commissioners as her dower, to-wit: Lot one of the northwest quarter of section six (6) township 35, range 4 east."

There was a sharp issue as to whether plaintiff was entitled to dower, and proof was put in pro and con. Defendants filed no motion to arrest the judgment rendered on that issue and no motion for a new trial, nor did they preserve (in a bill of exceptions filed during the term, or afterwards by leave then granted), the evidence introduced on the issue of dower or no dower, or the exceptions saved at that trial.

At a subsequent term, when judgment was rendered for the damages and execution was ordered for them and a writ of possession was awarded, defendants did file unsuccessful motions for a new trial and

in arrest, took due leave to file a bill of exceptions and in due time filed one. In that bill of exceptions they undertook to preserve the evidence introduced and the exceptions saved at the first trial at a former term.

Defendant Mamie is a minor and only child of Andrew Larkin, deceased. Defendant Moran seems to be in possession of the *locus in quo,* but how he holds, whether as tenant, purchaser or under some other claim of right, does not clearly appear in the pleadings or in the proof. While the pleadings are silent on the point, we gather from the testimony that defendant J. S. Larkin was a brother of Andrew. There is some faint evidence that he acted somewhat *in loco parentis* in and about taking charge of and renting the real estate for and on behalf of his niece, but in what legal capacity, if any, is dark.

At a certain time after the cause was appealed here, the death of J. S. Larkin was suggested. Thereat *scire facias* issued to one McLaran, administrator of his estate, for the purpose of revivor. The matter was not pursued, no order of revivor was made and the case was argued and submitted with the record in that condition.

Going back to the early stages of the case below, it appears that on a certain day plaintiff, by motion filed, suggested that Mamie was an infant served with process, that she had neglected to procure the appointment of a guardian to defend the suit, and prayed the court to appoint some competent person as guardian for her, as by statute provided.

On that same day an order was entered, *viz.*: "That Hon. W. S. Anthony be and is hereby appointed guardian *ad litem* for the minor defendants herein."

No notice to such appointee is shown, nor was his written consent filed and no separate answer was filed on behalf of the minor—neither did the guardian *ad*

*litem* at any time or stage appear in person or by counsel and take any step in the case, so far as disclosed by the record.

On that same day a general answer was filed for all the defendants, not naming them severally, but using a plural form. After a denial of each and every allegation, the answer concludes as follows: "Further answering defendants say that plaintiff was never lawfully married to Andrew Larkin; that at the time plaintiff claims to have married Andrew Larkin she was a married woman and incapable of contracting marriage. Wherefore defendants pray to be dismissed hence with their costs." Signed: "Smith and Anthony, Wm. H. Clopton, for Defts."

To that answer plaintiff replied denying "each and every allegation, intimation and allusion therein."

With the pleadings in this fix, the trial came on on the dower issue, the evidence was heard and, while the matter was in the breast of the court, plaintiff filed an amended petition, reading:

"Plaintiffs state that coplaintiff Etta M. Renneman, was at the date of her intermarriage with Isaac Renneman, the widow of Andrew Larkin, deceased, who departed this life on the — day of February, 1900, seized of estate of inheritance in the following lands, to-wit: Lot number one (1) of the northwest quarter of section six (6) in township thirty-five (35) north, of range 4 east, containing about one hundred acres, lying, being and situate in the county of *St. Louis* (*sic*) and State of Missouri.

"Plaintiffs state that Mamie Larkin is the only daughter of the said Andrew Larkin, and that J. S. Larkin and David Moran are in possession of said premises. Plaintiffs state that more than two years have elapsed since the death of the said Andrew Larkin and dower in said land has not been assigned to coplaintiff Etta M. Renneman, formerly Etta M. Larkin, the widow of said Andrew Larkin, although

she has never released said dower nor done any act to bar the same.

"Wherefore, plaintiffs pray that coplaintiff's Etta Renneman's dower in said land be admeasured, that she be put in possession of the part assigned to her and that she have and recover damages by reason of being deforced of her dower therein and for her costs in this behalf expended."

There was no answer whatever to this amended petition and no leave asked to file one or to refile the former.

On such record defendants assign error, *viz.*:

(a) In that the petition does not state a cause of action.

(b) In that there was no guardian *ad litem* appointed as required by statute and the infant Mamie was at no time represented by such guardian.

(c) In that the judgment is erroneous because it decrees that the widow be put into possession of *all* the land described in the petition.

(d) In that the evidence shows that plaintiff was not the lawful wife of Andrew Larkin.

(e) There is a preliminary question, not raised by counsel, *viz.*: whether the cause may proceed on appeal after the suggestion of the death of one of the appellants and without a revivor in the name of the administrator.

Of these in reverse order.

I. It has been ruled that on the death of one of a number of appellants, a cause may proceed on appeal without a revivor. [Reed v. Colp, 213 Mo. 1. c. 581.]

II. At the hearing leading up to the interlocutory judgment for dower one main issue was whether plaintiff was ever the lawful wife of Andrew Larkin, deceased. It seems Andrew was entangled in an alleged executory contract to marry, and had breached the contract. For that breach, he was sued. Pending

such suit, he went from his home in Missouri to Illinois, preceded or followed there by plaintiff who had been his handmaiden. In Illinois, under cover of a disguised name, *viz.*, "Melvin A. Larkin," he married plaintiff, then Miner. She was born Miner, had married one Clinton, had procured a divorce and had resumed her maiden name. The twain, Andrew and Etta, returned separately to Andrew's home in Missouri. There they lived as man and wife for a month and then, on pretense that it would injure him in his defense of the breach of promise case if the fact of marriage leaked out, he put her away from him—sending her to her sisters in Reynolds county. She saw him no more. Once she heard from him, but the letter is not accounted for and its contents not shown. Presently, Andrew died leaving the child, Mamie, by a former wife and admittedly seized as owner of the *locus in quo*. When plaintiff came to show her divorce from Clinton, she introduced a transcript of a judgment of divorce on personal service in the Reynolds Circuit Court. Thereupon defendants introduced an exemplification of the whole record in that suit; and it is upon the showing there made that they contend the Reynolds Circuit Court had no jurisdiction of the divorce suit. This, because neither did the petition allege nor did the decree find the residence of plaintiff to be in Reynolds county, or that she had resided in the State of Missouri one whole year next before the filing of the petition. [R. S. 1899, secs. 2922 and 2924.]

The point is interesting and grave, but the questions raised are reserved; since the evidence introduced at the first hearing is not properly preserved in the bill of exceptions nor is any exception thereto preserved for review. Defendants were not entitled to an appeal from the interlocutory judgment decreeing dower. This is so because an action to assign dower is not within the class of cases wherein inter-

locutory judgments are appealable. [R. S. 1899, sec. 806.] They were entitled to appeal from the final judgment, but such appeal does not bring up the evidence at the trial resulting in the interlocutory judgment at a former term and the exceptions saved to the admission of such evidence, unless both such evidence and exceptions were preserved by a timely term bill of exceptions. [R. S. 1899, sec. 728.] That was not done in this case, and, on the authority of Richardson v. Schuyler County Agr. and Mech. Assn., 156 Mo. 407, neither the evidence nor exceptions thereto are here for consideration. That case but applies the elementary rule that an exception dies with the term unless its life is preserved by a bill. On such showing, we put from us any consideration of the assignment of error in hand.

III. The judgment is self-evidently erroneous in awarding a writ of possession for the whole tract. If she was entitled to a writ, it was only for the part of the land admeasured and set off to her as dower by the report of the commissioners, as approved by the court. [R. S. 1899, sec. 2963.] It is further erroneous in giving a personal judgment against defendants for the damages and in awarding execution against them personally. Section 2977 ordains that: "Execution thereof (*viz.*, on the judgment for damages) shall be awarded only against the estate in which dower shall have been assigned." [Griffin v. Regan, 79 Mo. 73.] The judgment should have been special and the award of execution responsive. But we would not reverse on this score as the point is waived by counsel for defendants.

IV. Is there reversible error to be predicated of the failure of the guardian *ad litem* to consent to his appointment, whether by filing his acceptance in writing and thereafter acting for his ward by filing an-

swer and participating in the defense, or by filing such answer and so participating in the defense without filing a written consent?

The right determination of those questions can only be reached by considering our statutes and keeping in view the remedy advanced and the mischief to be retarded thereby.

Sections 558, 559 and 560 of the Revised Statutes of 1899, follow:

Sec. 558. "After the commencement of a suit against an infant defendant, and the service of process upon him, the suit shall not be prosecuted any further until a guardian for such infant be appointed."

Sec. 559. "Such appointment shall be made by the court in which the suit is pending, or by the judge thereof in vacation, upon the written request of the infant defendant, if of the age of fourteen years or more, or, if such infant be under said age, on the written request of a relative or friend of the infant, and on the written consent of any competent person proposed as a guardian, and such request and consent shall be filed in the office of the clerk of the court before any answer by such infant shall be filed."

Sec. 560. "If such infant defendant neglect, for one day after the first day of the term at which he is bound to appear to the suit, to procure the appointment of a guardian to defend the suit, the court shall appoint some competent person to be guardian for such infant in the defense of such suit."

The three sections are strictly *in pari materia*, and have been the law for seventy-five years. The first and last have descended as live law without variation or shadow of turning from Revised Statutes 1835. The middle section (now 559) originally read as follows: "Such appointment shall be made upon the request of the defendant, and on the written consent of any competent person proposed as guardian by the court in which the suit is pending, or by a judge there-

of in vacation, and shall be filed in the office of the clerk of the court, before any plea by such infant shall be filed." [R. S. 1835, p. 456, sec. 25.]

Sections 558, 559 and 560 of our present statutes appeared in the Revised Statutes of 1835 as sections 24, 25 and 26 (p. 456), save that in 1879, section 25, Revised Statutes 1835, was amended to read as it now does. The amendment obscures the sense a trifle, but we think there is no escape from the conclusion that the amended section retains the sense and purpose of the old one, and that all these statutes had a common purpose and must be construed together to effectuate that purpose. Those sections must be held to prescribe that a suit against an infant should not proceed without the appointment of an adult person of mature judgment to defend his rights. The appointment should be made at the very beginning of the proceeding after service of process and before answer. The statute says so (Sec. 658). Such, too, is the general doctrine and the reasons for the rule are obvious. [10 Ency. of Pl. and Pr., 638.]

We know the appointment of a guardian *ad litem* has not infrequently been looked upon in practice as a bare technicality and that the office of such guardian has been deemed to involve perfunctory and shadowy duties, but such theory is unreasoned and such practice indefensible. The reason of the thing and the office and duties of a guardian *ad litem* are set forth with precision and felicity by HAYS, president of the court, and received the sanction of no less an oracle of the law than Chief Justice GIBSON, in the case of Mercer v. Watson, 1 Watts l. c. 348-9, viz.: "What then is meant by an appearance and defense in an action, and particularly, when it is said that an infant shall appear and defend by guardian? This is considered as an important privilege of the infant: justly so, for it is evident that his privileges with regard to contracts and other transactions would be of slight

utility, if he were liable to be dragged into court and
exposed there, unprotected in his ignorance, to con-
tend with skill and business, with learning and experi-
ence. There is no imaginable situation in which an
infant would be likely to suffer more from imbecility
of understanding. It may easily be seen that, under
these circumstances, he would soon be stripped of his
all. It is to protect him against such danger, that
the law assigns him a guardian in the suit. This guar-
dian is to do for him what with riper judgment he
would do for himself; he is to appear for him in his
proper person, employ competent attorneys, and
counsel to prepare and plead his cause; he is to collect
testimony, summon witnesses, and at the trial to af-
ford such aid to his counsel as may be necessary in
unexpected difficulties. It is only by exercising that
attention and vigilance in the cause of the minor,
which he would exert in his own, that he fairly dis-
charges his duty. When all this has been done, every-
thing in point of privilege has been secured to the
infant which the law contemplates, or justice demands.
It is something more than a mere technical defense,
which is required by the guardian; for these he might
furnish, and yet abandon the essential interests of
his ward, by coming in at the return of the writ and
entering a plea, and afterwards wholly neglecting the
cause. An appearance in general is either by the suitor
in proper person, or by his attorneys. But the in-
fant cannot appear in his own person, nor can he
authorize an attorney to appear for him; he can only
appear by his guardian, who derives his authority,
not from the infant, but from the court by which he is
appointed.''

Keeping in mind the significance of the office and
appointment of a guardian *ad litem* and the live and
important duties in respect to the infant's rights
devolving upon such appointee, our present - statutes
(as did the earlier) require his consent to serve. He

should be notified of his appointment and accept the office in writing. We do not hold that an acceptance in writing might not be waived by the guardian if he in fact accepted office and the record showed that he entered upon the performance of his duties and performed them under the eye of the court.

In this case there is no record showing that Hon. W. S. Anthony ever heard of his appointment, or acted under it in any step in the case. It seems that a firm of attorneys, "Smith and Anthony," filed an answer to the first petition before the appointment of any guardian *ad litem*. It seems that after the appointment the same firm filed an answer for all the defendants, uniting with themselves Mr. Clopton in the defense. But such record facts do not aid us. It would be audacious, absent light from the answer itself or elsewhere from the record, to take judicial cognizance that the "Anthony" of the firm of Smith and Anthony was the identical Hon. W. S. Anthony appointed guardian *ad litem* by the court. There may well be more than one person bearing the honorable name of Anthony in that region, and quite learned in the law. Courts take judicial notice of facts of current history, of geographical and scientific facts and of facts commonly known to all mankind. This, because courts should not admit themselves more ignorant than the rest of mankind. We might, if enlightened by subject-matter or context in a document held in judgment, assume that the surname of a given Washington was George or a given Lincoln, Abraham—this because the subject-matter or context pointed to George Washington or Abraham Lincoln, but no court has ever arrogated to itself such all-pervading and all-embracing knowledge of the facts of local history as would be assumed in taking judicial notice of the surname of an individual member of a partnership in the practice of law at any particular time in any given town in the State of Missouri. Not

only so, but if we were to assume that the guardian *ad litem* was in fact the junior member in Smith and Anthony, attorneys, yet we would be unwilling to hold that the mere appearance of that firm in answering generally for the defendants (without proof absent here) took the place of notice of the appointment as guardian *ad litem*, effected an appearance as such guardian, fulfilled the statutory requirement of consent to serve, or waived notice of the appointment and evidenced consent to serve by actually taking on his shoulders the burden of defending the infant.

The general doctrine is announced in the work last cited (10 Ency. Pl. & Pr., p. 662-3-4) to be that a guardian *ad litem* must consent to act under his appointment in order to render the appointment complete and effective. To quote: "There must, however, in all cases be either an express assent to the appointment or some action taken by the guardian denoting his assent. Thus he may manifest his acceptance by appearing in the suit, and filing an answer for the infant. The acceptance of the appointment should appear of record and where acceptance is not shown a judgment against the infant will be reversed. . . As a general rule, no person can appear as guardian *ad litem* unless he has been in fact appointed by the court, and the appointment should appear of record. An answer or defence interposed by one acting without appointment will not support a judgment against the infant."

It has so been ruled, in effect, by the St. Louis Court of Appeals in a memorandum opinion. [Creech v. Creech, 10 Mo. App. 586.]

An entirely different question would be here if the judgment had been in *favor* of the infant. In such case an appearance by attorney, blest by success in maintaining the infant's cause, would put the matter on another basis. [R. S. 1899, sec. 672; Padgett v. Smith, 206 Mo. l. c. 313, and cases cited.]

So, if this was a collateral attack on the judgment another question would be here. A judgment against an infant (as is his contract or deed) being voidable only and not void, would not be subject to collateral attack. [Townsend v. Cox, 45 Mo. 401; Charley v. Kelley, 120 Mo. 134; Weiss v. Coudrey, 102 Mo. App. l. c. 69; Shaffer v. Detie, 191 Mo. l. c. 388-9.]

This being an appeal from the judgment it is in the nature of a direct attack upon it. Accordingly, we rule:

*First,* that the premises considered, the judgment is erroneous and must be reversed;

*Second,* that the error is manifest on the face of the record and does not depend on matter brought here in the bill of exceptions.

V. The remaining question is the sufficiency of the amended petition in stating a cause of action. It is scant in allegation. It does not directly allege that the infant inherited the *locus in quo* as the only heir of Andrew, her father. There is no averment that Andrew died intestate. There is no averment as to the interest or estate of Moran, nor how he holds, nor any averment of similar import as to J. S. Larkin. The statute contemplates that under certain contingencies and circumstances damages for the deforcement of dower do not begin to run until demand is made. [R. S. 1899, sec. 2955.] But shadowy and vague as the petition is in direct allegation, it is aided by reasonable inferences and we shall not hold it bad after verdict. As the judgment must be reversed and the cause remanded for another trial, plaintiff might better amend and may do so if she elect.

In view of conclusion reached and legal propositions ruled, the judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. It is so ordered. All concur.