**Adam HERR, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. ED 83059.

Missouri Court of Appeals, Eastern District, Division Five.

March 30, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 13, 2004.

Application for Transfer Denied June 22, 2004.

Terry J. Flanagan, John W. Peel, St. Louis, MO, for Appellant.

Daniel N. McPherson, Jefferson City, MO, for Respondent.

GEORGE W. DRAPER III, Judge.

Adam Herr (hereinafter, "Herr") appeals the trial court's judgment finding his license was subject to suspension pursuant to Section 302.505 RSMo (2002).[1] Herr contends that because his vehicle was out of fuel it was inoperable, and therefore, there was insufficient evidence to support the conclusion he was driving or operating the vehicle. We affirm.

On April 14, 2002, Highway Patrol Trooper Keathley (hereinafter, "Trooper Keathley") was involved in a traffic stop on Missouri Highway 47 when he received a dispatch concerning a red Mustang. After completing the traffic stop, Trooper Keathley remained in his vehicle on the side of the road, waiting for the red Mustang to approach his location. While waiting, an individual approached Trooper Keathley and told him that a man outside of a red Mustang was trying to flag down traffic. As Trooper Keathley approached the location to investigate, he saw a red Mustang traveling down a hill at a rate of speed below the posted speed limit. The red Mustang came to rest at the bottom of the hill and pulled over to the shoulder of the road. Trooper Keathley saw Herr exit the red Mustang from the driver's side. Herr told Trooper Keathley the red Mustang was out of gas and no one was driving, but he and three passengers had been pushing the car. Trooper Keathley smelled alcohol on Herr's breath and noticed Herr's speech was slurred. Trooper Keathley administered a field sobriety test, which Herr failed. Herr submitted to a chemical test, revealing a blood alcohol content of .128 percent.

Herr was charged with driving while intoxicated in violation of Section 577.010. The Department of Revenue issued a Notice of Suspension/Revocation of Herr's driving privileges pursuant to Section 302.505. Herr's license suspension was upheld following a hearing. Herr filed for, and received, a trial *de novo*. The trial court entered its judgment finding Trooper Keathley had probable cause to arrest Herr for driving while intoxicated and Herr was driving with a blood alcohol concentration of .08 percent or more. Herr appeals.

 The trial court's judgment in a case tried without a jury must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An appellate court should set aside a judgment if it is against the weight of the evidence only with a firm belief the judg-

---

**1.** All further statutory references are to RSMo (2002) unless otherwise noted.

ment is wrong. *Id.* A reviewing court defers to the trial court's factual findings and credibility determinations. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo.1998).

An officer has probable cause to arrest a suspect when that officer's knowledge of the facts and circumstances is sufficient to warrant a prudent person's belief the suspect committed an offense. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 621 (Mo. banc 2002). The existence of probable cause depends on information known to the officer prior to the arrest. *Id.*

A person commits the crime of driving while intoxicated when he or she operates a motor vehicle while in an intoxicated or drugged condition. Section 577.010. "Driving" means "physically driving or operating a motor vehicle." Section 577.001.1. "Driving" and "operating" are not further defined in the statute. Therefore, the Missouri Supreme Court has adopted the plain meaning of the terms as they are defined in the dictionary. *Cox v. Director of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003). "Drive" means "to guide a vehicle along or through." *Id. (quoting* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 692 (1993)). "Operate" means "to cause to function, usually by direct personal effort: work (˜a car)." *Id. (quoting* WEBSTER'S at 1581). A person who is driving a vehicle is also operating the vehicle. *State v. Cross,* 34 S.W.3d 175, 182 (Mo. App. W.D.2000) (*overruled on different grounds by Cox,* 98 S.W.3d at 551).

Herr argues that because the car was out of fuel it was inoperable. This fact does not preclude a fact finder from determining that Herr was driving or operating the vehicle. *See State v. Edmonson,* 371 S.W.2d 273, 275–76 (Mo.1963) (holding it is not necessary for a vehicle's motor to be running, the gears to be engaged, or the vehicle to be running on its own power to be "driven, used or operated" without the vehicle owner's permission). The Department of Revenue cites several cases from other jurisdictions holding that a person may be considered to be driving or operating a motor vehicle while intoxicated even though the engine is not running. *See New Jersey v. Jeanette,* 172 N.J.Super. 587, 412 A.2d 1339 (Law Div.1980) (holding that coasting on a motorcycle with its engine off constitutes "operation"); *People v. Jordan,* 75 Cal.App.3d Supp. 1, 142 Cal. Rptr. 401, 407 (1977) (holding "[a] person is driving a motor vehicle when he or she is steering or controlling a vehicle which is in motion, even though the motor is off at that time"); *New Jersey v. Stiene,* 203 N.J.Super. 275, 496 A.2d 738 (App. Div. 1985) (holding an automobile which could be rolled or pushed was operable). These courts recognize the fact that the risks inherent in driving while intoxicated are still present when the vehicle is not operating under its own power. Missouri's statutory scheme prohibiting driving or operating a motor vehicle while intoxicated aims to protect people from the danger presented by intoxicated persons attempting to guide a vehicle along the road. *Cross,* 34 S.W.3d at 191 (Ellis, J., dissenting). This danger is not obviated by the fact that the moving vehicle is out of fuel.

Here, Herr's red Mustang was in motion when Trooper Keathley observed it. Moments after the red Mustang came to rest, Trooper Keathley saw Herr exit the driver's side of the red Mustang. We defer to the trial court's factual findings of the events leading to Herr's arrest. *Rousan,* 961 S.W.2d at 845. A person who saw someone exit the driver's side of a vehicle that had been traveling down a hill could reasonably believe that person had steered the vehicle down the hill. Steering a vehicle that is in motion constitutes "guiding a vehicle along or through," per the defini-

tion of "drive" as adopted in *Cox.* 98 S.W.3d at 550. Thus, because Trooper Keathley witnessed Herr exit the driver's side of the red Mustang and exhibit signs of intoxication, there was substantial evidence supporting the trial court's judgment that Trooper Keathley had probable cause to arrest Herr for driving while intoxicated. Therefore, the Department of Revenue properly suspended Herr's driving privileges.

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, C.J., and KATHIANNE KNAUP CRANE, J., concur.