STATE of Missouri, Plaintiff–Respondent,

v.

**Willie A. CHAMBERS, Defendant–Appellant.**

No. 27329.

Missouri Court of Appeals, Southern District, Division One.

Oct. 19, 2006.

Motion for Rehearing or Transfer Denied Nov. 13, 2006.

Application for Transfer Denied Dec. 19, 2006.

Daniel E. Kirsch, Crane, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Robert J. Bartholomew, Jr., Asst. Atty. General, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Willie A. Chambers ("Appellant") was convicted of the felony crime of driving while intoxicated, a violation of section 577.010 [1]; he was found guilty in a court-tried case and sentenced to four years in the custody of the Missouri Department of Corrections. Appellant brings one point on appeal, contending that there was insufficient evidence to support a determination that Appellant was physically driving or operating a motor vehicle. We reverse.

On October 6, 2001, Appellant was discovered slumped over the steering wheel of a car parked in William Utke's driveway. Mr. Utke had not seen the car pull into the driveway, nor did he know how long the car had been parked there, as the vehicle was approximately one hundred fifty feet from his house. The car's headlights were not on and the engine was not running. Although it was not raining that evening, Mr. Utke heard the windshield wipers squeaking on the windshield. Appellant did not respond when Mr. Utke tried to rouse him. Ms. Utke called the sheriff's office.

Officer Jerry Mallonee of the Christian County Sheriff's Department responded to Ms. Utke's call. Officer Mallonee noticed that the car's lights were off but he could not recall whether the wipers were on. The engine was not running but the keys were in it. Officer Mallonee could not recall whether the ignition was on or off. There was a dispute about exactly how the

1. All references to statutes are RSMo 2000, unless otherwise specified.

vehicle was positioned, as Mr. Utke testified that "it was definitely off the blacktop," while Officer Mallonee claimed the vehicle was "partially in the driveway and partially on the roadway." Officer Mallonee noticed beer bottles under and inside the car. He was "pretty sure" the car's window was down and Appellant was sitting in the driver's seat. Appellant was awakened and asked if he had been drinking. He responded "a couple." When asked if he had been operating a vehicle, Appellant replied "next question." The vehicle was not registered to Appellant. Appellant was arrested and taken to Christian County jail where he was administered a breathalyzer test. The test revealed that his blood alcohol content was .208.

Appellant claims a judgment of acquittal should have been granted because there is a reasonable doubt that Appellant was physically driving or operating a motor vehicle in that the vehicle was motionless, its motor was not running, the vehicle's lights were not on, none of the witnesses testified that the vehicle's engine or hood were warm, the vehicle's key was not turned to a position required for the motor to function, Appellant did not admit to operating the vehicle, the car was not registered to Appellant, and there was no independent evidence to show Appellant operated the vehicle.

The State claims there was sufficient evidence that Appellant had been operating or driving the vehicle he was found in. The State relies upon the evidence that Mr. Utke was alerted by barking dogs to the presence of a vehicle at 9:30 p.m. and Mr. Utke's testimony that it was usual for his dogs to immediately alert him by barking if someone came onto his property.

The State also relies upon the fact that Appellant was behind the wheel, the keys were in the ignition and the windshield wipers were running although it was not raining. Furthermore, the State argues that the answer "next question" demonstrates consciousness of guilt as the State claims that Appellant had "a duty" to rebut the inference that he was driving or operating the vehicle and he did not do so.

■ Appellant brings one point on appeal. He claims that the trial court erred in denying his motion for acquittal in that the evidence the State produced at trial was insufficient to support a conviction of driving while intoxicated. In reviewing a challenge based upon sufficiency of the evidence in a bench-tried criminal case, the court applies the same standard as in a jury-tried case. *State v. Agee*, 37 S.W.3d 834, 836 (Mo.App. S.D.2001). Appellate court review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). In weighing the sufficiency of the evidence, this Court will accept as true all reasonable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *Agee*, 37 S.W.3d at 836. This Court's function does not include reweighing the evidence. *State v. Anderson*, 107 S.W.3d 447, 450 (Mo.App. S.D.2003).

■ A person is driving while intoxicated under section 577.010 "if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010. "Driving" is defined under the same chapter as "physically driving or operating a motor vehicle." Section 577.001.1.[2] This

---

**2.** Following an amendment in 2005, this definition is now found in section 577.001.2 Cum. Supp. (2005).

Court must determine whether the State presented sufficient evidence that a reasonable fact finder could find beyond a reasonable doubt that Appellant was driving or operating a motor vehicle and that he did so while intoxicated. *Anderson,* 107 S.W.3d at 450. Circumstantial evidence may be used to prove the elements of driving while intoxicated, however, in those cases in which the accused's engine was not running at the time in question, the State must present " 'significant additional evidence of driving and the connection of driving in an intoxicated state . . . to sustain a criminal conviction.' " *Id.* (quoting *State v. Eppenauer,* 957 S.W.2d 501, 503 (Mo.App. W.D.1997)).

     In 1996, the legislature amended the definition of "driving or operating" a vehicle under section 577.001.1. The previous version of the statute stated that "the term 'drive,' 'driving,' 'operates' or 'operating' means physically driving or operating or being in actual physical control of a motor vehicle." Under the August 1996 amendment, the phrase "or being in actual physical control" was omitted. The supreme court later clarified this definition further in a revocation case, *Cox v. Director of Revenue,* 98 S.W.3d 548 (Mo. banc 2003). The court adopted the plain and ordinary meanings for the words "drive" and "operate." *Id.* at 550. "Driving" a vehicle requires one to "guide that vehicle along or through." *Id.* This definition focuses on whether the vehicle was physically in motion. *Id.* To "operate" a vehicle under the statute, one must cause the vehicle to "function usually by direct personal effort: work." *Id.* The court also held the line of cases which held the act of turning off the ignition was "operating"

were overruled because that act caused the car not to function. *Id.* at 551.

In *Cox,* the court concluded that this bright-line test for operating a motor vehicle was satisfied in that Mr. Cox caused the vehicle's motor to function where the defendant was found behind the wheel of his car with the keys in the ignition and the engine running. *Id.* at 550–51. Based upon this, the court concluded that the officer had probable cause to believe that Cox was operating the vehicle for the purposes of an administrative revocation of his license. *Id.* The present case is distinguishable from *Cox* in that even though Appellant was found slumped over the steering wheel of his vehicle with the keys in the ignition, both witnesses testified that they never observed the engine running. These facts would probably not meet the low standard of probable cause required for administrative license revocation, but, more importantly, they certainly do not meet the much higher burden of proof beyond a reasonable doubt of operation of the vehicle required to sustain a conviction in a criminal case.

In addition to *Cox,* there are three other cases this Court has decided since the 1996 amendment[3] that guide us in the present opinion. In each of those cases, Appellants contested the sufficiency of the evidence of vehicle operation. In *State v. Wiles,* 26 S.W.3d 436 (Mo.App. S.D.2000), this Court upheld the defendant's DWI conviction stating that there was sufficient evidence that he operated a motor vehicle. *Id.* at 441. In *Wiles,* a police officer discovered a truck parked at an angle in front of a dumpster. *Id.* at 438. Inside, Mr. Wiles was slumped over the wheel of his truck. *Id.* He had one foot on the brake and another on the gas, causing the engine

---

**3.** In *Cox,* the supreme court instructed courts not to rely on those cases interpreting the pre–1996 version of the law to define "operat-

ing" because those decisions did not define that term separately. *Cox,* 98 S.W.3d at 551.

to race. *Id.* at 438, 441. The truck's taillights, brake lights, and headlights were all on. *Id.* On the other hand, in *Anderson*, 107 S.W.3d at 451, and *State v. Thurston*, 84 S.W.3d 536, 541 (Mo.App. S.D.2002), we held that the evidence presented at trial was insufficient for a reasonable finder of fact to find beyond a reasonable doubt that defendants operated the vehicle while intoxicated.

In *Anderson*, a motorist was hit by what he thought was a white truck. *Anderson*, 107 S.W.3d at 448. The motorist saw the truck pull into a nearby parking lot. *Id.* About five minutes later, another witness observed as Mr. Anderson exited a white truck with "dents in the front" in the same parking lot. *Id.* at 449. When questioned by a police officer, the defendant denied driving the truck. *Id.* This Court reversed Mr. Anderson's felony DWI conviction. *Id.* at 451. In doing so, we emphasized that there was no evidence presented that the truck that struck the motorist actually stopped in the parking lot, that defendant's truck was the one that actually struck the motorist, that anyone actually witnessed defendant driving or parking the vehicle, or that anyone felt the hood to see if the engine was warm. *Id.* at 450–51.

In *Thurston*, the defendant was convicted of a class B misdemeanor for driving while intoxicated. *Thurston*, 84 S.W.3d at 538. In that case, Ms. Thurston was discovered by police officers in her truck which was in a ditch. *Id.* The officers helped her from the truck, however, the record failed to reflect whether she was found in the driver's or passenger's seat. *Id.* Ms. Thurston's conviction was reversed because there was no evidence produced at trial that she was ever behind the wheel at any time, that the engine or lights were on, that the key was in the ignition, that anyone felt the hood to see if it was warm, that defendant admitted to driving the

truck, that the truck was registered to defendant, that she was seen attempting to drive the truck, or any other indication that defendant was driving or operating the motor vehicle. *Id.* at 538–541.

In this case, the State relies heavily on the proposition that Mr. Utke's barking dogs immediately alerted him to Appellant's arrival as proof that Appellant drove the car to the property just prior to Mr. Utke's discovery of Appellant. Mr. Utke testified that it was common for his dogs to bark if someone came onto his property or if something was in the driveway; however, he admitted that despite his dogs' usual behavior, it is possible that the car could have been there for a minute or even half an hour. The Utkes were enjoying a quiet evening at home alone watching television and did not have occasion to look out the window or be alerted to Appellant's presence until the dogs barked. The dogs could have barked for a variety of reasons other than announcing Appellant's arrival. The admittedly unpredictable behavior of Mr. Utke's dogs does not constitute sufficient proof as to the time of the car's arrival at the Utke home to permit an inference of Appellant's operation of the vehicle immediately prior to his discovery. There is no way to tell precisely how long Appellant had been parked there, as Mr. Utke himself admitted at trial that it could have been a half an hour.

The State failed to introduce the requisite "significant additional evidence" of Appellant's driving or operating his vehicle that is necessary to sustain a criminal conviction in a non-engine running case. *Anderson*, 107 S.W.3d at 450. Mr. Utke looked outside and saw a car parked in his driveway. Appellant was asleep behind the wheel of a car and the keys were in the ignition. There was no testimony of eyewitnesses who saw Appellant driving that night or parking his car in the Utke's

driveway. There was no evidence produced that the hood or passenger compartment were warm. Appellant was not the registered owner of the car. Neither the engine nor the lights of the car were on, however, the windshield wipers were. Furthermore, Appellant did not admit to driving the vehicle to the Utke home.

The State characterizes Appellant's statement "next question" in response to Officer Mellonee's question whether he had operated the vehicle as evidence of Appellant's consciousness of guilt. We reject this interpretation. At the time the statement was made, Appellant had been arrested and advised of his *Miranda* rights. By saying "next question," Appellant was exercising his right to remain silent. The State's attempt to characterize this statement as an admission is misplaced. The State next claims that Appellant had a duty to rebut the inference that he was driving and he did not do so. This assertion is patently incorrect, as the State bears the burden of proving each element of the crime charged. *State v. Prier*, 634 S.W.2d 197, 200 (Mo. banc 1982). "[T]he defendant does not bear the burden of producing evidence of a theory of innocence." *Id.* All of these facts taken together lead to the inevitable conclusion that the State failed to produce sufficient evidence from which a reasonable finder of fact could find beyond a reasonable doubt that Appellant operated the vehicle.

The State failed to meet its burden to prove beyond a reasonable doubt each element of its case against Appellant. While the State proved that Appellant was in fact intoxicated on the night of October 6, 2001, they failed to prove beyond a reasonable doubt that he was driving or operating a motor vehicle. As such, there was insufficient evidence from which a reasonable finder of fact might have found Appellant guilty beyond a reasonable doubt. Therefore, the conviction against Appellant is reversed.[4]

PARRISH, J., McGHEE, Senior J., concur.

4. In so finding, we do not ignore the case cited by the State, *Herr v. Director of Revenue*, 134 S.W.3d 686 (Mo.App. E.D.2004). At issue in *Herr* was the judgment of the trial court suspending Herr's driver's license; however, the court was evaluating the term "driving" and not "operating." *Id.* at 688–89.