Cynthia L. Martin, Judge
Karbino William Deng Barac ("Barac") appeals from the trial court's entry of judgment convicting him of driving while intoxicated as an aggravated offender after a bench trial. Barac argues that there was insufficient evidence to establish the offense's temporal requirement--that Barac had operated the vehicle while intoxicated. We affirm.
Factual and Procedural History[1]
On April 5, 2017, at approximately 6 p.m., Officer Jason Hill ("Jason Hill") of the St. Joseph, Missouri Police Department was dispatched to a wellbeing check on Interstate 229 near Exit 22. Officer Hill testified that, when he received the call, he was already driving south on 22nd Street, so he was not far from the location of the wellbeing check. Officer Hill described the vehicle as resting on Interstate 229, directly before the bridge over 22nd Street. The vehicle was positioned so that it was six to twelve inches from the concrete bridge, and was parked parallel to the guardrail, which was only a few inches away from the vehicle so that no one could enter or exit the vehicle on the passenger side.
When Officer Hill approached the vehicle, he saw Barac slumped with his head on the steering wheel. Officer Hill opened the vehicle's door, and Barac immediately became uncooperative and combative. Officer Hill smelled a strong odor of intoxicants coming from Barac's body and noticed Barac's bloodshot, watery eyes. Further, Barac's speech was slurred, but as the encounter continued, Barac's speech improved. Officer Hill asked Barac to submit to a portable breath test. Barac refused. Officer Hill testified that he did not attempt to conduct any field *129 sobriety tests at the scene because it was apparent to him that Barac would refuse to participate. Thereafter, Officer Hill placed Barac under arrest and escorted him to the patrol car. Barac used short, uncertain steps, walking slowly toward the patrol car. Officer Hill transported Barac to the station. While at the station, Barac refused to submit to a breath or blood test, so Officer Hill obtained a warrant to take a blood sample. Barac's blood sample indicated that he had a blood alcohol content of .359 percent.
While on the scene, Officer Hill confirmed that the vehicle was registered to Barac. Officer Hill testified that, while the vehicle was not running, the vehicle's key was in the ignition and turned to the "on" position so that Officer Hill had to turn the key counterclockwise to remove it from the ignition. Officer Hill also testified that he found no containers of alcohol around the vehicle, and during a subsequent inventory search of the car, he found no containers of alcohol in the car itself. On cross-examination, Officer testified that he did not feel the vehicle's hood to determine whether it was hot and that he did not check if the vehicle had gas. Officer Hill then testified that he did not know how long the vehicle had been parked on the scene.
The State charged Barac with driving while intoxicated as a persistent offender in violation of section 577.010.[2] The State later amended the charges to driving while intoxicated as a chronic offender in violation of section 577.010. After a bench trial, the trial court found Barac guilty of driving while intoxicated as an aggravated offender and sentenced him to five years' imprisonment.
Barac appeals.
Standard of Review
We assess the sufficiency of the evidence to support a conviction in a court-tried case using the same standard as in a jury-tried case. State v. Sutton , 427 S.W.3d 359, 360 (Mo. App. W.D. 2014). To determine whether the evidence is sufficient to support the conviction, " 'we must look to the elements of the crime and consider each in turn to determine whether a reasonable [factfinder] could find each of the elements beyond a reasonable doubt.' " Id. (quoting State v. Thenhaus , 117 S.W.3d 702, 703 (Mo. App. E.D. 2003) ). In doing so " 'we are required to take the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, disregarding all contrary inferences.' " Id. (quoting Thenaus , 117 S.W.3d at 703 ). "However, [we] 'will not supply missing evidence or grant the state unreasonable, speculative, or forced inferences.' " State v. Thompson , 538 S.W.3d 390, 393 (Mo. App. W.D. 2018).
Analysis
Barac raises a single point on appeal in which he argues that there was insufficient evidence to prove beyond a reasonable doubt that he was driving while intoxicated as an aggravated offender. Barac does not deny that he was intoxicated when Officer Hill arrived on the scene and does not dispute that his prior convictions render him an aggravated offender. Instead, Barac argues that the State failed to present sufficient evidence from which a reasonable factfinder could have found beyond a reasonable doubt that Barac operated his vehicle while intoxicated. In other words, Barac challenges the sufficiency of the evidence to support the temporal connection between Barac's alleged operation of the vehicle and his intoxication. Barac asserts that, because no witness testified that they *130 actually observed Barac driving the vehicle and because Officer Hill testified that the engine was not running when he found Barac slumped over the steering wheel, the question at trial was whether the evidence presented by the State demonstrated that Barac operated the vehicle while intoxicated before Officer Hill arrived on the scene. Barac contends that, pursuant to relevant precedent, the evidence presented was insufficient to demonstrate that Barac had done so. We disagree.
"A person commits the offense of driving while intoxicated if he or she operates a vehicle while in an intoxicated condition." Section 577.010.1. As used in Chapter 577, " '[d]rive,' 'driving,' 'operates' or 'operating,' means physically driving or operating a vehicle or vessel." Section 577.001(9). Our Supreme Court has concluded, using the dictionary definitions of "drive" and "operate," that a defendant "drives" a vehicle when he or she "guide[s] it along or through anything," and that a defendant "operates" a vehicle when he or she causes the car to function by direct personal effort or work. Cox v. Dir. of Revenue , 98 S.W.3d 548, 550 (Mo. banc 2003). Thus, if the key is in the ignition and the engine is running, a person "operates" a vehicle, even if that person is sleeping or unconscious. Id. When Officer Hill found Barac slumped over the vehicle's steering wheel, the key was in the ignition and was turned to the "on" position, but the engine was not running. Thus, the situation does not align with the test for "operates" set forth in Cox .
"[I]n those cases in which the accused engine was not running at the time in question, the State must present 'significant additional evidence of driving [or operating] and the connection of driving [or operating] in an intoxicated state ... to sustain a criminal conviction.' " State v. Chambers , 207 S.W.3d 194, 197 (Mo. App. S.D. 2006) (quoting State v. Anderson , 107 S.W.3d 447, 450 (Mo. App. S.D. 2003) ). Thus, our task on appeal is to determine "whether the State presented sufficient evidence that a reasonable [factfinder] could find beyond a reasonable doubt that [Barac] was driving or operating a motor vehicle and that he did so while intoxicated." Id. " '[T]he State must establish, through direct or circumstantial evidence, the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication.' " State v. Baker , 499 S.W.3d 730, 733 (Mo. App. W.D. 2016) (quoting State v. Shoemaker , 448 S.W.3d 853, 856 (Mo. App. W.D. 2014) ). When driving or operating is not personally observed by an eyewitness, circumstantial evidence may be used to prove that that the defendant was driving or operating a vehicle while intoxicated. Id. "Examples of ... 'significant additional evidence' as it relates to the 'drive' [or 'operate'] element of [driving while intoxicated] includes, but is not limited to: lights inside or outside the vehicle were illuminated; the key was in the ignition; the accused was found behind the steering wheel; the accused was the sole occupant of the vehicle; the vehicle was found in a lane of traffic; and the vehicle was registered to the accused." Id. at 734 (citing Chambers , 207 S.W.3d at 198-99 ; State v. Karl , 270 S.W.3d 514, 517 (Mo. App. W.D. 2008) ; State v. Thurston , 84 S.W.3d 536, 538-40 (Mo. App. S.D. 2002) ). Further, "[r]efusal to take a [breath] test can constitute evidence from which a reasonable inference can be drawn that the driver was intoxicated at the time of the operation of the vehicle. Id.
In State v. Baker , we considered whether the State presented "significant additional evidence" that the defendant drove or operated his vehicle while intoxicated. Id. at 733. There, the State presented evidence that an eyewitness called 911 after *131 observing the defendant's vehicle parked in the middle of a busy intersection, blocking a lane of traffic. Id. at 734, 735. The eyewitness saw the sole occupant of the vehicle leaning back in the driver's seat of the vehicle, with his arm hanging out the window. Id. at 734. The officer dispatched to the scene saw a vehicle parked in the middle of an intersection with the driver's door open and the defendant's sandals on the driver's side floorboard. Id. The officer also observed the vehicle's key in its ignition in the "on" position, but the engine was not running. Id. The vehicle's head lights and rear lights were illuminated. Id. The officer observed two open and largely consumed bottles of whiskey in the vehicle. Id. at 735. The officer confirmed that the vehicle was registered to the defendant, who the officer saw staggering away from the vehicle barefoot. Id. at 734. The defendant ultimately fell face down in a nearby yard. Id. When the officer approached the defendant, the officer smelled a strong odor of intoxicants coming from the defendant's person and observed other signs of intoxication. Id. at 735. The defendant refused to take field sobriety tests and refused to submit to a chemical breath test. Id.
We concluded that, from that evidence, the trial court could have reasonably inferred that, while the defendant was intoxicated, he:
drove his vehicle into the middle of a busy intersection; stopped his vehicle so as to block a lane of traffic without putting on his flashers (as a reasonable and sober person would do upon having mechanical issues); passed out behind the steering wheel of his vehicle next to his two open McCormick whiskey bottles that he had been consuming in large quantities; was noticed shortly thereafter by another driver in this moderate to heavy traffic intersection who called 9-1-1; awakened shortly thereafter and continued to be so intoxicated that he attempted to stagger away from his vehicle on foot without shoes that he was previously wearing and which were-not so coincidentally-found in the driver's-side floorboard by the foot pedals of his vehicle; fell face first into the grass twenty-five feet from his car; and belligerently refused field sobriety testing or breathalyzer testing.
Id. Based on the evidence presented and the reasonable inferences drawn therefrom, we concluded that the State presented "sufficient and significant circumstantial evidence for a reasonable trier of fact to find beyond a reasonable doubt that [the defendant] drove or operated his vehicle in temporal connection to his severe intoxication." Id. ; see also State v. Varnell , 316 S.W.3d 510, 518 (Mo. App. W.D. 2010) (concluding that "where the defendant's blood alcohol level was almost three times the legal limit, and he was at a temporal and geographical distance from a source of alcohol, it strains credulity to suggest that he was not intoxicated at the time of driving").
Here, the trial court had before it the following evidence: At approximately 6 p.m. on Wednesday, April 5, 2017, Officer Hill was dispatched to check the wellbeing of a person in a vehicle parked on Interstate 229 near an exit. Officer Hill arrived shortly thereafter. Officer Hill observed that the vehicle was parked precariously, so that its front end was less than a foot from a concrete bridge, and the vehicle was parallel to and only inches away from the guardrail so that no one could enter into or exit from the passenger side of the vehicle. Barac was seated in the driver's seat and was slumped over with his head resting on the steering wheel. When Barac awoke, he was immediately uncooperative, combative, and showed signs of intoxication. Officer Hill determined that the *132 vehicle was registered to Barac. Officer Hill found the key in the vehicle's ignition and turned to the "on" position so that he had to turn it counterclockwise to remove it from the ignition, though the vehicle's engine was not running. Officer Hill found no containers of alcohol around the vehicle or in the vehicle. After being arrested on suspicion of driving while intoxicated, Barac refused to submit to a breath or blood test, requiring a warrant to test Barac's blood. The blood test indicated that Barac had a blood alcohol content of .359 percent, more than four times the legal limit.
From this evidence, the trial court could have reasonably inferred that the vehicle, precariously parked on an interstate at 6 p.m. on a weekday evening, had not been at that location for an extended period when Officer Hill was dispatched to and arrived at the scene.[3] The vehicle's position on the interstate also permitted the reasonable inference that whoever drove the vehicle before to that location did so erratically. Barac was found slumped over in the driver's seat with his forehead resting on the steering wheel, was the only person in a vehicle registered to him, and the passenger door could not be utilized given the vehicle's parked location, permitting the inference that Barac had driven the vehicle to its parked location. Barac's blood alcohol content was over four times the legal limit, and there was no alcohol in or near the vehicle, permitting the reasonable inference that Barac consumed the alcohol in his system before he parked the vehicle on the interstate. See Varnell , 316 S.W.3d at 518. Barac refused to take a breath test, permitting the inference that Barac was the driver of the vehicle and was intoxicated when the vehicle was parked on Interstate 229 near an exit. See Baker , 499 S.W.3d at 734.
We conclude that all of the evidence and inferences drawn therefrom, when viewed in the light most favorable to the conviction, "constitute[ ] sufficient and significant circumstantial evidence for a reasonable trier of fact to find beyond a reasonable doubt that [Barac] drove or operated his vehicle in temporal connection to his severe intoxication." Id. at 735. In other words, it was reasonable for the trial court to conclude that Barac was intoxicated at the time he drove the vehicle on Interstate 229 to the place where it was parked.
Barac cites a trio of cases to support his position that the evidence and reasonable inferences drawn therefrom do not constitute sufficient and significant circumstantial evidence permitting a reasonable factfinder to conclude that Barac drove or operated the vehicle while he was intoxicated: State v. Hatfield , 351 S.W.3d 774 (Mo. App. W.D. 2011) ; State v. Davis , 217 S.W.3d 358 (Mo. App. W.D. 2007) ; and State v. Chambers , 207 S.W.3d 194 (Mo. App. S.D. 2006). These cases are readily distinguishable.
In Hatfield , a police officer was dispatched to the scene of an accident at approximately 11:00 a.m.
*133 351 S.W.3d at 775. When he arrived, the officer observed a car parked in the driveway of a home with a damaged front end, and saw damage to a fence and to the lawn. Id. at 775-76. The defendant was standing outside of the vehicle, and the defendant displayed multiple indicia of intoxication. Id. at 776. The State did not introduce any evidence regarding whether the defendant had access to alcohol at or near the scene. Id. at 780-81. The defendant later refused to perform field sobriety tests or to submit to a chemical breath test. Id. at 781. We concluded that "the State failed to temporally connect [the defendant's] intoxication when [the officer] arrived at the scene to his previous operation of the vehicle." Id. at 780. To support our conclusion, we noted that "the time which elapsed between [the defendant's] operation of the vehicle and his refusal to submit to field sobriety and chemical breath tests is unknown, and the State failed to negate the possibility that he had access to alcohol in the meantime." Id. at 781. Hatfield is distinguishable. Here, the evidence and reasonable inferences drawn therefrom permit the conclusion that Barac's vehicle had not been parked for an extended period of time on Interstate 229 before Officer Hill was dispatched, and that Barac, who had a blood alcohol content of over four times the legal limit, had no access to alcohol in his parked vehicle.
In Davis , we concluded that there was insufficient evidence to demonstrate beyond a reasonable doubt that the defendant drove while intoxicated. 217 S.W.3d at 361. There, an officer was dispatched to the scene of an accident at 10:20 p.m. Id. at 359. When the officer arrived three minutes later, he saw that a vehicle had crashed into a light pole, but no one was in or around the vehicle. Id. A woman reported that the vehicle's occupant had fled to an address two or three blocks away. Id. The officer went to the address and found two men in the backyard. Id. The defendant admitted to crashing his car into the light pole. Id. The defendant displayed signs of intoxication and denied having consumed alcohol since the accident. Id. Police officers found empty beer cans in the car, including under the driver's seat. Id. The defendant was charged with and convicted of driving while intoxicated. Id. The State argued on appeal that the factfinder could have made the reasonable inference that the accident occurred just moments before the officer arrived on the scene, but we rejected that argument. Id. at 360-61. We concluded that "nothing in the record [established] the approximate time [the defendant] was operating the vehicle or the time the accident occurred" so that there was no evidence to "indicate[ ] how much time elapsed between the accident and the arrest." Id. at 361. Davis is distinguishable because, Barac's vehicle was precariously parked on an interstate where it can be inferred it would not have been for an extended period before Officer Hill was dispatched, and Barac was found in the vehicle, with no access to alcohol, despite having a blood alcohol content over four times the legal limit, supporting the reasonable inference that Barac was intoxicated when he drove and then parked his vehicle on Interstate 229.
Chambers involved a defendant found slumped over the steering wheel of a car parked in a residential driveway. 207 S.W.3d at 195. Police found beer bottles under and inside the vehicle, and a breath test revealed that the defendant had a blood alcohol content of .208. Id. at 196. When asked by a police officer whether he had operated the vehicle, the defendant responded "next question." Id. The owner of the residence testified that he was altered to the car's presence in his driveway by barking dogs. Id. The Southern District concluded that the State failed to meet its burden to prove beyond a reasonable *134 doubt that the defendant was intoxicated while he drove or operated a motor vehicle. Id. at 199. The Southern District cited to the unpredictability of the owner's dogs in alerting the owner to potential threats by barking and rejected the State's characterization of defendant's statement "next question" as an admission. Id. at 198-99. Unlike Chambers , Barac's vehicle was parked near a bridge on an interstate in St. Joseph at 6 p.m. on a weekday, and no alcohol was found in or near the vehicle. The factfinder could have reasonably inferred that the vehicle had not been parked on the interstate for an extended period before Officer Hill arrived on the scene, and that Barac did not consume alcohol in or near his vehicle after he was parked on the interstate, leaving no reasonable explanation for his .359 percent blood alcohol content other than that he drove while intoxicated to the location where his vehicle was found.
Barac's point on appeal is denied.
Conclusion
We affirm the trial court's judgment.
All concur

We view the facts in the light most favorable to the conviction. State v. Sutton , 427 S.W.3d 359, 359 n.1 (Mo. App. W.D. 2014).

All statutory references are to RSMo 2016 unless otherwise indicated.

Barac argues in his reply brief that, because the State did not present evidence at trial about the amount of traffic on Interstate 229 where the vehicle was found parked, the trial court could not have inferred that the vehicle had not been in that location long before Officer Hill was dispatched. However, both a trial court and an appellate court may take judicial notice of "current history, of geographical ... facts, and of facts commonly known to all mankind." Reineman v. Larkin , 222 Mo. 156, 121 S.W. 307, 311 (Mo. 1909). Courts may do so because they "should not admit themselves more ignorant than the rest of mankind." Id. The trial court's recognition that traffic flow on an interstate in a populated area around 6 p.m. on a weekday makes it unlikely that a precariously parked vehicle will go unreported for long was a permissible inference.