**STATE of Missouri, Respondent,**

v.

**Kenneth P. VARNELL, Appellant.**

**No. WD 70957.**

Missouri Court of Appeals, Western District.

July 6, 2010.

As Modified Aug. 31, 2010.

512

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

Daniel E. Hunt, Jefferson City, MO, for Appellant.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

Kenneth P. Varnell ("Varnell") appeals the ruling of the Circuit Court of Cole County ("trial court") denying Varnell's Motion for Judgment of Acquittal. On appeal, Varnell argues that there was insufficient evidence to support his conviction. We affirm.

1. "We consider the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and infer-

ences." *State v. Ollison,* 236 S.W.3d 66, 68 (Mo.App. W.D.2007).

## Factual and Procedural Background[1]

On August 19, 2008, an overcast but dry day, Varnell was involved in a single-vehicle accident on Route D, in Cole County, Missouri. At 7:40 p.m., Deputy James Flessa ("Deputy Flessa") of the Cole County Sheriff's Department was dispatched to the scene of the accident. Deputy Flessa arrived ten minutes after being dispatched and noted that an ambulance and fire trucks were already present, and firemen were working on extricating Varnell from his mangled pickup truck.

Following extrication from the vehicle, emergency personnel strapped Varnell to a stretcher and began treating his severe head wounds. Deputy Flessa approached Varnell while personnel were attending to his medical needs, and the deputy detected a strong odor of alcohol coming from Varnell's person and noticed that his speech was slurred. Deputy Flessa questioned Varnell about whether he was alone in the vehicle and whether he had been drinking. Varnell responded that he had consumed two beers earlier in the evening and that no one else was in the vehicle. No alcohol containers were found in or near the vehicle. Because Varnell was injured and receiving medical treatment, the deputy did not perform field sobriety tests on Varnell.

In the ambulance, Deputy Flessa informed Varnell that, based on the deputy's observations and conversation with him, Varnell was being placed under arrest for driving while intoxicated. Deputy Flessa asked Varnell to provide a blood sample, and Varnell consented. At the hospital, Varnell's blood was drawn, and chemical tests were performed. The toxicology report indicated that Varnell's ethyl alcohol concentration was .234%. The exact times at which Varnell was transported to the

hospital, admitted into the hospital, and blood extracted for chemical tests did not come into evidence.

Around 10:00 p.m., while Varnell was at the hospital, Corporal M.A. Halford ("Corporal Halford") arrived at the scene of the accident and spoke with Deputy Flessa. Corporal Halford examined the accident site and found only one set of scuff marks on the pavement. Based upon the evidence available at the accident scene, he determined that Varnell committed a lane violation and crashed into a culvert causing the vehicle to nose into the ground and roll multiple times. Ultimately, Corporal Halford concluded that Varnell was involved in a one-vehicle accident.

The State charged Varnell with one count of driving while intoxicated, and because Varnell was guilty of two previous alcohol-related offenses, he qualified as a persistent DWI offender, pursuant to section 577.023 RSMo Cum.Supp.2007.[2] As such, the State charged Varnell with committing one count of a Class D Felony DWI, section 577.010. Varnell did not put on any evidence but instead submitted a motion for entry of judgment of acquittal at the close of the State's evidence. Rule 27.07(a). The trial court in this bench-tried case denied Varnell's motion, found him guilty and sentenced him to two years at the Department of Corrections. However, the trial court suspended the execution of the sentence and placed Varnell on supervised probation. This timely appeal follows.

### Standard of Review

In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury-tried case. Rule 27.01(b); *State v. Niederstadt*, 66 S.W.3d 12, 13 (Mo. banc 2002).

The appellate court's role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008). We accept as true all evidence and inferences favorable to the State while disregarding all contrary evidence and inferences. *Id.*

### Legal Analysis

In his sole point on appeal, Varnell argues that because the State failed to establish the exact time at which his accident occurred and his blood was drawn, the evidence was insufficient to support a finding that, beyond a reasonable doubt, the appellant was intoxicated while driving.

" 'The offense of driving while intoxicated, section 577.010.1, requires proof of two elements: (1) that the defendant operated a motor vehicle, and (2) was intoxicated while doing so.' " *State v. Ollison*, 236 S.W.3d 66, 68 (Mo.App. W.D.2007) (quoting *State v. Davis*, 217 S.W.3d 358, 360 (Mo.App. W.D.2007)). In the instant case, Varnell does not dispute that the State's evidence was sufficient to establish the first element of the offense: that he operated the vehicle that crashed into the culvert on Route D. However, Varnell argues that because the evidence did not establish precisely when the accident occurred or when his blood was drawn, the State failed to prove the second element: that Varnell was intoxicated at the time he operated his vehicle. " 'Proof of intoxication at the time of arrest, when remote from the operation of the vehicle, is insufficient in itself to prove intoxication at the time the person was driving.' " *Id.* (quoting *Davis*, 217 S.W.3d at 360). "In this

---

**2.** All citations are to RSMo 2000 unless otherwise indicated.

remote circumstance, '[t]ime [is] an element of importance' that the State must establish to meet its burden of proving that the defendant drove while intoxicated." *Davis,* 217 S.W.3d at 360 (quoting *State v. Dodson,* 496 S.W.2d 272, 274 (Mo. App. W.D.1973)). "Remoteness," as used in drunk driving cases, has two dimensions: remoteness in time from operating a vehicle, and remoteness in distance from the vehicle.

■ Because Varnell was trapped in his pickup, there existed no remoteness from the vehicle, and consequently, only remoteness in time is relevant to the instant case. When the defendant is arrested at a remote time from the operation of the vehicle, the State must show further evidence than a test that reveals the defendant is drunk at the time of *arrest. Dodson,* 496 S.W.2d at 274. There are two rationales for this requirement, but both have the same foundation: the longer the interval between driving and testing, the less accurately the test reflects the state of the driver at the time of the arrest. *Meyer v. Dir. of Revenue,* 34 S.W.3d 230, 235 (Mo. App. E.D.2000) (overruled on other grounds by *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003)).

The first reason that an extended interval between driving and testing can result in an inaccurate test is that the defendant may have had time to drink alcohol *after* driving.

The second rationale for requiring additional evidence is rooted in the nature of how alcohol is processed by the human body. Intoxication does not occur immediately upon the ingestion of alcohol. *Davis,* 217 S.W.3d at 361. Instead, alcohol must be absorbed into the bloodstream before it affects a person, and it can take thirty to ninety minutes before the maximum blood alcohol level is reached. *Id.*; 2 Donald H. Nichols & Flem K. Whited III, *Drink-*

*ing/Driving Litigation: Criminal and Civil* §§ 14.3, 14.27 (1998). Consequently, it is theoretically possible for a driver who quickly ingests alcohol immediately prior to taking a short drive to be in a sober condition when driving, but, due to the process of absorption of alcohol into the bloodstream, to exceed the limit afterwards. *Id.*

In the instant case, Varnell does not articulate which theory is the basis for his appeal. However, neither theory, when applied to the facts of this case, undermines the State's case to a sufficient level to reverse the conviction.

The limited timeline provided in the record consists of the following: (1) Deputy Flessa was dispatched to the scene at 7:40 p.m. on August 19, 2008; (2) Deputy Flessa arrived at the scene about ten minutes later when emergency personnel were already there; (3) Corporal Halford arrived at the scene and created an accident report around 10:00 p.m.; (4) at an undefined point between the times Deputy Flessa arrived and Corporal Halford arrived at the scene, Varnell was placed under arrest and transported to the hospital for wound treatment and blood alcohol concentration testing; and (5) the hospital's examination of Varnell's blood established that his ethyl alcohol concentration was .234% (i.e. almost three times the legal limit).

Varnell contends that the record is insufficient to create the timeline essential to a showing that his intoxication was contemporaneous with operating the vehicle. *See Dodson,* 496 S.W.2d at 274 (quoting *State v. Creighton,* 201 N.W.2d 471, 473 (Iowa 1972)) (articulating that "the fact a defendant was under the influence of an alcoholic beverage at the time of arrest, without a showing of more, will not support a finding that he was in that condition

when driving a motor vehicle at some earlier time").

Although the time periods when Varnell consumed alcohol and crashed his vehicle are not specifically defined, circumstantial evidence in this case provides the "showing of more" necessary to support Varnell's conviction beyond a reasonable doubt, to-wit: (1) when emergency personnel arrived at the scene, Varnell was trapped in his vehicle and required assistance of emergency personnel to be extricated; (2) immediately after Varnell was extricated, law enforcement searched Varnell's vehicle and found no evidence of alcohol containers; (3) Varnell admitted to drinking alcohol (i.e. two beers) [3] prior to the accident; (4) the manner in which the accident occurred was consistent with the trial court's conclusion that Varnell was intoxicated at the time of the crash; (5) Varnell appeared inebriated at the scene and smelled strongly of alcohol; (6) Varnell's blood alcohol level was almost three times the legal limit; (7) the accident took place on a frequently traveled thoroughfare; and (8) Varnell was seriously injured in the crash, and his wounds were still bleeding when Deputy Flessa arrived.

As an initial matter, there is no support for the proposition that Varnell became intoxicated between the operation of the vehicle, Deputy's Flessa observation of his intoxicated state, and his positive blood test. Varnell was trapped in his pickup truck and had to be extricated by emergency personnel. The uncontroverted testimony of Deputy Flessa was that there were no alcohol containers found in or near the vehicle. Furthermore, Varnell was in the presence of law enforcement or emergency personnel from the time he was removed from the vehicle until his blood

was drawn. Consequently, Varnell did not have access to alcohol and could not have become intoxicated *after* he wrecked his vehicle. The facts demonstrate that the alcohol consumption, which led to Varnell's displaying symptoms of intoxication to Deputy Flessa and Varnell's positive blood test, occurred *before* he began driving.

However, the State must not only show that Varnell consumed alcohol *before* he drove, but that such consumption led to his blood alcohol level being over the legal limit *when* he was driving, not merely at the time of his arrest or subsequent blood test. As past cases have noted, when the blood test is administered at a time that is distant from the operation of the vehicle, there must be additional evidence to support a conviction. *State v. Wilson,* 273 S.W.3d 80, 82 (Mo.App. W.D.2008); *Ollison,* 236 S.W.3d at 68; *Davis,* 217 S.W.3d at 360.

In *Wilson,* the defendant and a passenger were involved in single-car accident. *Id.* at 81. A state trooper was dispatched to the scene, but Wilson had already been taken to the hospital when the trooper arrived. *Id.* The trooper followed Wilson to the hospital, interviewed him there, and eventually obtained Wilson's permission to conduct a blood test. *Id.* Wilson's blood alcohol concentration was .15%. *Id.* In finding that the State did not provide sufficient additional evidence to convict Wilson once the blood test evidence was demonstrated to be too remote in time, this Court noted:

A review of the evidence surprisingly shows only that Wilson drove a vehicle, was involved in an accident, and was intoxicated at the hospital sometime during a 24–hour period on December 17, 2006. There is no testimony as to

---

**3.** This "admission" is, of course, in the context of a blood alcohol concentration test by the hospital within hours of the wreck in

which the result of the test was a .234% blood alcohol concentration level.

when the accident occurred. There is no testimony as to when the trooper arrived at the scene. There is no testimony as to when the trooper arrived at the hospital, what time he observed the defendant who was undergoing treatment, or what time the blood sample was drawn. The State elicited none of this information from the trooper. The State did not call the paramedics who took Wilson to the hospital to establish any time parameters or his condition at the scene. The State did not call any hospital workers either.

*Id.* at 82.

The facts of the present case are clearly distinguishable and provide sufficient additional evidence from which a trier of fact could have reasonably found Varnell guilty beyond a reasonable doubt.

█ When determining whether the State provided sufficient evidence, apart from the blood test, to show that Varnell drove while intoxicated, we note that the required additional evidence need not be direct evidence; rather, " 'circumstantial evidence can supply the "driving" and "while" elements when driving is not observed.' " *State v. Neal,* 979 S.W.2d 223, 225 (Mo.App. S.D.1998) (quoting *Wilcox v. Dir. of Revenue,* 842 S.W.2d 240, 242–43 (Mo.App. W.D.1992)).

█ In the present case, the details provided regarding the manner of the accident distinguish our facts from *Wilson* and support the inference that Varnell was intoxicated when driving. The undisputed testimony of Corporal Halford was that Varnell committed an unnecessary lane-change violation, crossed Route D, and crashed into a culvert on the opposite side of the road. The absence of any skid marks or scuff marks other than Varnell's vehicle confirmed that Varnell's truck was the only vehicle involved in the accident.

The single-vehicle accident occurred on a dry road with daylight still remaining. In addition, Varnell admitted to the deputy that he had been drinking prior to the accident. We note that the manner of a crash does not, on its own, provide sufficient evidence to support a conviction. However, the circumstances of an accident, when coupled with other supporting evidence and interpreted in the light most favorable to the judgment, can provide additional competent evidence of drunk driving. *See Morris v. Dep't of Revenue,* 800 S.W.2d 806, 808 (Mo.App. E.D.1990) ("Although her behavior arguably could be attributed to a severe head injury sustained during the accident, the noticeable odor of intoxicants as well as the *type of one-car accident* in which Morris had been involved were further indicia that she had been driving while intoxicated.") (emphasis added). By admitting to alcohol use after veering off a dry road into a culvert, with no external factors present to explain the crash, Varnell provided the court with substantial circumstantial evidence to support a conviction.

█ Furthermore, "a brief lapse of time between a defendant's driving and being seen in an intoxicated condition requires less exacting evidence of the defendant's intoxication." *State v. Davis,* 226 S.W.3d 927, 929 (Mo.App. W.D.2007). An interval of less than thirty minutes between when the defendant was seen driving and when he was observed to be intoxicated has been found to be sufficiently brief. *Id.* The circumstances of this case support the conclusion, beyond a reasonable doubt, that the interval of time between the defendant's accident and arrest was relatively brief.

The defendant's accident occurred on Route D just outside Jefferson City. The uncontroverted evidence was that this is a frequently traveled thoroughfare, and the

defendant's vehicle was overturned, in obvious distress, on the side of the road. Consequently, the likelihood of the defendant being trapped inside his vehicle for an extended period of time without aid being called was minimal. This inference is supported by the fact that the defendant suffered substantial injuries in the accident. When emergency personnel arrived the bleeding had not clotted; but instead, Varnell was still bleeding profusely. Whether a defendant is still bleeding can be a factor in determining how long ago the accident occurred. *Davis,* 217 S.W.3d at 361. However, despite this significant and ongoing blood loss, Varnell was conscious and responsive when they extricated him from the wreck. Deputy Flessa was able to testify at trial to Varnell's condition on removal from the wreck because, unlike the trooper in *Wilson,* he arrived ten minutes after dispatch notified him of the accident, while emergency personnel were still removing Varnell from the wreck.

Consequently, unlike the facts in *Wilson,* in this case there is substantial evidence to support the inference that the interval between the accident and the deputy's arrival was limited in duration. Also in contrast to *Wilson,* upon arrival, the deputy noted that Varnell smelled of alcohol and that his speech was slurred.[4] The deputy concluded that Varnell was intoxicated. The observations of law enforcement personnel can be sufficient to support a finding of intoxication. *State v. Davison,* 668 S.W.2d 252, 253–54 (Mo.App. S.D.1984). In addition, Varnell admitted at the scene that he had been drinking, providing further support for the deputy's

observations and the trial court's verdict. Consequently, because the State was able to establish evidence that supported a finding that the accident was not remote in time from the observation of Deputy Flessa, the facts of this case are distinguished from *Wilson* and the totality of the circumstantial evidence was sufficient to support the trial court's finding that Varnell was intoxicated when operating his vehicle.

While not necessary to our ruling today, we also note that Varnell's blood alcohol level, when taken at the hospital, was found to be almost three times the legal limit—.234%. Despite the fact that the specific time of the blood draw was not entered into evidence, Varnell's highly elevated blood alcohol level constitutes additional competent evidence of Varnell's intoxication at the time of operation of the vehicle.

As noted earlier, the accepted finding that alcohol's effects do not reach their maximum potency until thirty to ninety minutes after it is consumed means that Missouri courts typically require the State to establish the time that has elapsed between when the defendant drove and when the test was administered. *Davis,* 217 S.W.3d at 361. However, the delayed effects of alcohol only are delayed as to the *maximum* potency. The *Davis* court cited to *Drinking/Driving Litigation: Criminal and Civil* to establish that maximum intoxication does not occur until thirty to ninety minutes after a final drink. 2 Donald H. Nichols & Flem K. Whited III, *Drinking/Driving Litigation: Criminal and Civil* §§ 14.3, 14.27 (1998). The same source notes that while *maximum* absorp-

4. We recognize that Varnell's head injury provides a possible explanation of his slurred speech. However, in the instant case, there is no evidence on the record that the type of head injury Varnell suffered would lead to this symptom. Furthermore, the inference that Varnell's slurred speech was a result of

excessive alcohol consumption is consistent with and supports the other evidence on the record. *Morris,* 800 S.W.2d at 808. Consequently, in this case, when examined in the light most favorable to the judgment, Varnell's slurred speech is probative evidence supporting the verdict.

tion on average does not occur until the thirty– to ninety-minute window, absorption begins soon after the alcohol is consumed. *Id.* at 14–28 fig.ʼ 14–7.

In other words, the thirty– to ninety-minute window is not a dividing line between when an individual is affected by alcohol consumption and when the individual is sober. Instead, maximum blood alcohol is a single point on an intoxication continuum that does not occur immediately after alcohol consumption. However, the higher the blood alcohol level on this continuum is when tested, the more likely that a defendant was impaired earlier, even thirty to ninety minutes earlier. Consequently, in cases such as this one, where the defendant's blood alcohol level was almost three times the legal limit, and he was at a temporal and geographical distance from a source of alcohol, it strains credulity to suggest that he was not intoxicated at the time of driving.

The State is not required to disprove every *possible* theory under which a defendant could be innocent, but instead must present sufficient evidence from which a trier of fact could find the defendant guilty beyond a reasonable doubt. *State v. Johnson,* 244 S.W.3d at 152. The State did so in this case.

The judgment of the trial court is affirmed.

VICTOR C. HOWARD and ALOK AHUJA, Judge, concur.