CORRECTED
02/26/2019



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD80925 |
| | ) | |
| PETER DANIEL RASTORFER, | ) | FILED: February 26, 2019 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County**
**The Honorable Shane T. Alexander, Judge**

**Before Division Two: Alok Ahuja, P.J., and Thomas H. Newton
and Mark D. Pfeiffer, JJ.**

After a bench trial in the Circuit Court of Clay County, appellant Peter Rastorfer was convicted of driving while intoxicated in violation of § 577.010 RSMo. He was sentenced as a chronic offender to eight years' incarceration. Rastorfer appeals. He argues that the State's evidence was insufficient to convict him of the offense, because the State failed to prove that he was intoxicated *while* operating a motor vehicle. We affirm.

## Factual Background[1]

Two minutes before midnight, on Saturday, October 3, 2015, two Clay County Sheriff's deputies were dispatched to North Eastern Avenue and 134th Street in Smithville for a reported vehicle accident. Upon arrival, Deputy Mary Conrad saw a white Ford F-350 pickup truck off the side of the roadway on an embankment. The truck was lying upside down on its roof. The vehicle was close to and facing the

---

[1] Consistent with our standard of review, we view the evidence in the light most favorable to the circuit court's judgment.

roadway, with its headlights and tail lights on. Deputy Conrad described the weather as clear, and the road as straight and dry with a paved asphalt surface.

Rastorfer was standing near the truck. As Deputy Conrad approached him, she smelled a "faint" odor of alcohol on his breath, and noticed that his eyes were bloodshot. Deputy Conrad testified that, based on her observations, she believed Rastorfer was intoxicated. Rastorfer declined medical treatment at the scene.

Rastorfer told Deputy Conrad that he was traveling northbound on North Eastern Avenue when the passenger side wheels of his truck went off the side of the road. He said that he overcorrected and crossed over the center line, went off the opposite side of the road, and then caught an embankment, which caused the truck to flip. The truck rolled several times before it came to rest on its roof next to the road.

Deputy Chris Johnson responded to the scene of the accident shortly after midnight and began a driving while intoxicated investigation. Deputy Johnson detected a "strong odor" of alcohol coming from Rastorfer. He also observed Rastorfer's eyes to be "watery and glassy," and his balance "swaying and uncertain." Rastorfer told Deputy Johnson that he had last consumed an alcoholic beverage 30 minutes earlier. Deputy Johnson testified that Rastorfer's "hand was bandaged up" due to "an injury on his hand."

Deputy Johnson performed two field sobriety tests: a horizontal gaze nystagmus (HGN) test, and the walk-and-turn test. He detected three out of six possible clues of intoxication on the HGN test. Deputy Johnson testified that the presence of four clues on the HGN test generally indicates intoxication; but he explained that he was unable to complete the HGN test, and did not score Rastorfer's right eye, because Rastorfer "wouldn't follow my proper instructions" by visually following the stimulus. Deputy Johnson detected four out of eight possible clues of impairment on the walk-and-turn test, and testified that two clues indicates

intoxication. When Deputy Johnson attempted to perform the one-leg stand test, Rastorfer refused to comply. Following his investigation, Deputy Johnson arrested Rastorfer for driving while intoxicated and transported him to the Clay County Detention Center.

At the Detention Center, Deputy Johnson read Rastorfer the Missouri Implied Consent warning, and told Rastorfer that if he refused to submit to chemical testing he would lose his driving privileges for one year. Rastorfer refused to submit to testing.

In response to questioning, Rastorfer admitted that he had been driving the truck when it crashed. He said he had been injured in the crash but not "substantially." While Deputy Johnson was interrogating him, Rastorfer's hand bled on the counter. Rastorfer said that, "the last three hours prior to his contact with law enforcement," he had been at "dirt track races in Grain Valley." Rastorfer said that he had consumed five beers on the day of the accident, between 2:00 p.m. and 10:00 p.m. Rastorfer admitted that he was under the influence of alcohol at the time of his questioning by Deputy Johnson.

Rastorfer was charged as a chronic offender with one count of felony driving while intoxicated. He waived his right to a jury trial, and the case was tried to the court. The court found that Rastorfer had been convicted of four or more intoxication-related traffic offenses and was therefore a chronic offender under § 577.023, RSMo. The court found Rastorfer guilty as charged, and sentenced him to eight years' imprisonment.

Rastorfer appeals.

**Standard of Review**

In bench-tried criminal cases like this one, the court's "findings shall have the force and effect of the verdict of a jury." Rule 27.01(b). Accordingly, "[w]e assess the sufficiency of the evidence to support a conviction in a court-tried case using the

3

same standard as in a jury-tried case." *State v. Barac*, 558 S.W.3d 126, 129 (Mo. App. W.D. 2018) (citation omitted). We ask whether "the State has introduced sufficient evidence from which [the court] could have found each element of the crime beyond a reasonable doubt." *State v. Ajak*, 543 S.W.3d 43, 46 (Mo. 2018) (citation and internal quotation marks omitted).

> To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences. But the Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences.

*Id.* (citations and internal quotation marks omitted).

### Analysis

> As the name of the offense indicates, to support a conviction under § 577.010 the State must prove beyond a reasonable doubt that the defendant was (1) driving (2) while (3) intoxicated. Each of these words has significance, and imposes a separate evidentiary burden on the State.

*State v. Hatfield*, 351 S.W.3d 774, 776–77 (Mo. App. W.D. 2011).

Although Rastorfer conceded to Deputy Johnson that he was intoxicated at the time he was *arrested*, and that he was driving his truck at the time of the accident, he argues that the State's evidence was insufficient to establish, beyond a reasonable doubt, that he was intoxicated *while* driving.

We have recognized that to sustain a conviction for driving while intoxicated, "'[t]he State must establish, through direct or circumstantial evidence, the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication.'" *Barac*, 558 S.W.3d at 130 (quoting *State v. Baker*, 499 S.W.3d 730, 733 (Mo. App. W.D. 2016) (citation omitted)). There was sufficient circumstantial evidence in this case to establish the required temporal connection between Rastorfer's admitted driving, and his admitted intoxication. Rastorfer

4

admitted that he was driving his truck at the time of the accident. He also admitted to drinking five beers between 2:00 p.m. and 10:00 p.m. on the date of the accident. The Sheriff's deputies encountered Rastorfer shortly after midnight. He later told Deputy Johnson that, in the three hours prior to encountering the deputies, he had been dirt track racing in Grain Valley, more than thirty miles away from the accident scene. Given that Rastorfer told officers that he had stopped drinking by 10:00 p.m., the time he said he had been in Grain Valley, and the distance he travelled from Grain Valley to the accident scene, it was a reasonable inference that Rastorfer had finished drinking well before the accident occurred. Rastorfer admitted that he was intoxicated when officers interrogated him; on his own version of events, that intoxication must have derived from the alcoholic beverages he consumed before 10:00 p.m., which supports a reasonable inference that he was intoxicated thereafter—*while* he was driving, and causing the single-vehicle accident.

Officers observed signs of Rastorfer's intoxication when they first encountered him, and he admitted to being intoxicated at the Clay County Detention Center. Circumstantial evidence supports the inference that Rastorfer was driving, and the accident occurred, only shortly before the Sheriff's deputies arrived at the scene (and thus, only shortly before Rastorfer's admission, and the officer's observations, of his intoxication). Rastorfer's vehicle was upside down, very close to the roadway, with its headlights on and shining across the roadway. Given that the headlights and tail lights of the vehicle were illuminated, and given the position of the vehicle, it is a reasonable inference that the vehicle had not been in that position for any considerable period of time. *Cf. Barac*, 558 S.W.3d at 132 (location of vehicle close to traffic lanes of interstate highway supported the inference that the vehicle "had not been at that location for an extended period" before police arrived). The State also presented evidence that Rastorfer's hand bled

5

on a counter at the police station following the accident; a fact-finder could reasonably conclude that the injury was recent. *See State v. Varnell*, 316 S.W.3d 510, 517 (Mo. App. W.D. 2010) ("Whether a defendant is still bleeding can be a factor in determining how long ago the accident occurred.").

The circumstances of Rastorfer's vehicle accident also support the inference that he was intoxicated *while* he was driving. Rastorfer had a single-vehicle accident on a straight, dry, paved road surface, in clear weather. The accident was serious: the truck rolled several times, coming to rest upside down. Thus, despite favorable road conditions, and without any obvious external cause, Rastorfer veered off the side of the road and flipped his very large pickup truck. "[T]he circumstances of an accident, when coupled with other supporting evidence and interpreted in the light most favorable to the judgment, can provide additional competent evidence of drunk driving." *Varnell*, 316 S.W.3d at 516 (citation omitted). The fact that Rastorfer had admitted to substantial consumption of alcoholic beverages before the accident occurred only bolsters the inference that the accident was alcohol-related. *See Baker*, 499 S.W.3d at 734 ("a relatively brief period of time from a defendant's erratic driving and his arrest in an intoxicated condition can be sufficient to establish that connection" (between driving and intoxication)); *Varnell*, 316 S.W.3d at 516 ("By admitting to alcohol use after veering off a dry road into a culvert, with no external factors present to explain the crash, Varnell provided the court with substantial circumstantial evidence to support a conviction.").

Finally, Rastorfer's refusal to submit to a chemical breath test can be interpreted as evidence that he was conscious of his guilt for driving while intoxicated. *See Baker*, 499 S.W.3d at 734 ("Refusal to take a breathalyzer test can constitute evidence from which a reasonable inference can be drawn that the driver was intoxicated at the time of the operation of his vehicle.").

Rastorfer relies principally on three cases to argue for reversal: *State v. Ollison*, 236 S.W.3d 66 (Mo. App. W.D. 2007), *State v. Davis*, 217 S.W.3d 358 (Mo. App. W.D. 2007), and *State v. Hatfield*, 351 S.W.3d 774 (Mo. App. W.D. 2011). In each case, we reversed a conviction for driving while intoxicated based on our conclusion that the State had failed to present sufficient evidence that the defendant was intoxicated while driving. Those cases are materially distinguishable from this case, however. In each of those cases, we concluded that there was no competent evidence from which the fact-finder could determine, even approximately, when the defendant had been driving, and when an accident had occurred.[2] As we have explained above, however, this case is importantly different. While the precise time of the accident (and Rastorfer's last operation of his truck) may not be established by the State's evidence, the evidence *does* support the reasonable inference that Rastorfer had been driving only shortly before the Sheriff's deputies approached him, and that he had concluded his consumption of alcohol substantially earlier.

Rastorfer also argues that his conviction must be reversed because the State's evidence failed to negate the possibility that he had consumed alcoholic beverages at the scene of the accident, after the accident occurred. As we have explained above, however, the evidence permitted the reasonable inference that the accident had occurred only shortly before officers encountered Rastorfer around midnight, but Rastorfer told Deputy Johnson at the Detention Center that his alcohol consumption had concluded by 10:00 p.m. Moreover, there was no evidence of open

---

[2] *See Hatfield*, 351 S.W.3d at 780 ("Here, there is no evidence as to the approximate time that Hatfield was operating the vehicle or the time the accident occurred, or how much time elapsed between the accident and the arrest." (citation and internal quotation marks omitted)); *Ollison*, 236 S.W.3d at 69 ("[T]he State's evidence established only that [the accident] occurred sometime between 7:00 p.m. and 1:20 a.m."); *Davis*, 217 S.W.3d at 361 ("There is nothing in the record to establish the approximate time that Davis was operating the vehicle or the time [the] accident occurred.").

or empty alcoholic beverage containers at the scene. Even if the evidence did not wholly foreclose the possibility that Rastorfer consumed alcohol following the accident, "'[e]ven in a circumstantial evidence case, the evidence need not be conclusive of guilt, nor must the evidence exclude every hypothesis of innocence.'" *State v. Scroggs*, 521 S.W.3d 649, 654 (Mo. App. W.D. 2017) (citation omitted). "The State is not required to disprove every *possible* theory under which a defendant could be innocent," *Varnell*, 316 S.W.3d at 518; instead, "evidence is sufficient to support guilt if *any* reasonable inference supports guilt, even if other 'equally valid' inferences do not." *State v. Putney*, 473 S.W.3d 210, 219 (Mo. App. E.D. 2015) (citations omitted). In this case, the State's failure to present evidence to exclude the possibility that Rastorfer consumed alcoholic beverages after his accident does not require reversal, when the State presented other, sufficient evidence to prove Rastorfer guilty of driving while intoxicated beyond a reasonable doubt.

**Conclusion**

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.