

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | )    **WD78391** |
| v. | ) |
| | )    **OPINION FILED:** |
| | )    **August 16, 2016** |
| LESLIE M. BAKER, | ) |
| | ) |
| Appellant. | ) |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable James F. Kanatzar, Judge

**Before Special Division:** Zel M. Fischer, Special Judge, Presiding,
Mark D. Pfeiffer, Chief Judge, and Gary D. Witt, Judge

Mr. Leslie M. Baker ("Baker") appeals his conviction of the class B felony of driving while intoxicated ("DWI"), chronic offender, following a bench trial on stipulated evidence in the Circuit Court of Jackson County, Missouri ("trial court"). Baker was sentenced to six years' imprisonment. Baker challenges the sufficiency of the evidence to support his conviction. We affirm.

**Stipulated Facts**

The trial court entered its judgment in reliance on the following stipulated evidence. On June 30, 2013, at 10:47 p.m., Officer Steven Emberton of the Blue Springs Police Department was dispatched to the intersection of Ashton Drive and Oxford Lane, Blue Springs, Jackson County, Missouri, in response to a report by a 9-1-1 caller as to a possible intoxicated driver passed out behind the wheel of a vehicle. This is a busy residential area in Blue Springs, Missouri, as evidenced by Officer Emberton's dashboard camera depicting thirty-six vehicles proceeding through the intersection during the span of Officer Emberton's thirty-two-minute interaction with Baker and his vehicle. Upon arrival at 10:52 p.m., Officer Emberton observed a white 1983 Chrysler Imperial with the license number YE8-V1W parked in the middle of the intersection with the driver's-side door open with the headlights and rear lights still on. Officer Emberton observed a person later identified as Baker, staggering away from the vehicle and into the front yard of 2316 Ashton Drive approximately twenty to twenty-five feet from the vehicle. Officer Emberton detained Baker, at which time he observed a strong, overpowering odor of intoxicants coming from Baker's person and his eyes to be bloodshot and watery. The officer also observed Baker's speech to be slurred and mumbling as Baker spoke to Officer Emberton. Officer Emberton also observed Baker's balance to be uncertain, swaying, staggering, stumbling, and falling down.

Dispatch informed Officer Emberton that the vehicle was registered to Baker. Officer Emberton observed in plain view two open plastic and largely consumed plastic containers of McCormick whiskey in Baker's vehicle. One bottle was lying on the driver's-side floorboard,

---

[1] When a case is tried to the court on stipulated evidence, "[w]e view the evidence in the light most favorable to the verdict, and we ignore countervailing evidence." *State v. Todd*, 183 S.W.3d 273, 275 (Mo. App. W.D. 2005).

and the other was wedged between the driver's seat and the center console. The officer observed the keys to be in the ignition in the operating position. The engine was not running at that time. Baker's sandals were found lying on the driver's-side floorboard near the foot pedals.

Officer Emberton made contact with the party who originally called 9-1-1 about Baker and his vehicle parked in the roadway. That person was identified as Nicholas Billingsley. Mr. Billingsley stated that he and his wife were on their way home when they observed Baker's vehicle in the middle of the intersection, and it was not moving. Mr. Billingsley stated that he waited a brief period of time before driving around the vehicle. He stated that he saw Baker leaned back in the driver's seat with his left arm hanging out the window. He told Officer Emberton that the driver was passed out. Mr. Billingsley told the officer that no one else was in the car when he passed the vehicle.

Officer Emberton then requested that Baker submit to standard field sobriety tests. Baker stated that he would not consent to any of the field sobriety tests. At that time, Officer Emberton arrested Baker on suspicion of DWI. Officer Emberton transported Baker to the Blue Springs police station, read Baker Missouri's Implied Consent Law, and requested that Baker submit to a breathalyzer test, which Baker refused.

**Procedural Background**

The State charged Baker with one count of the class B felony of DWI, § 577.010,[2] and because he had previously been found guilty of four intoxication-related traffic offenses, he qualified as a chronic offender, § 577.023.1(2)(a). The case proceeded to a bench trial. In addition to the parties' joint stipulation of evidence, the trial court received into evidence without objection a certified copy of Baker's driving record, certified copies of Baker's four prior DWI convictions, a DVD of Officer Emberton's in-car dashboard camera, and Officer Emberton's

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

3

written report of the incident. Baker did not present any evidence at trial; instead, he moved for a judgment of acquittal at the close of the State's case and at the close of all the evidence. The trial court took the case under advisement and thereafter issued its judgment, finding Baker guilty of DWI as a chronic alcohol offender. The trial court sentenced Baker to six years' imprisonment.

Baker timely appealed.

## Standard of Review

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury-tried case." *State v. Varnell*, 316 S.W.3d 510, 513 (Mo. App. W.D. 2010). "The appellate court's role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt." *Id.* (citing *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008)). We accept as true all evidence and inferences favorable to the State and disregard all contrary evidence and inferences. *Id. See also State v. Besendorfer*, 439 S.W.3d 831, 834 (Mo. App. W.D. 2014). We review questions of law *de novo*. *State v. Todd*, 183 S.W.3d 273, 276 (Mo. App. W.D. 2005).

## Analysis

In Baker's sole point on appeal, he asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of the State's case, because there was insufficient evidence to support a DWI conviction. Baker does not challenge that he was in an intoxicated condition when Officer Emberton made contact with him. Instead, he argues that this is an "engine-not-running" case, and the State did not present "significant additional evidence" that he drove his vehicle while intoxicated.

4

The trial court found that, from the time when the 9-1-1 caller saw Baker leaned back in the driver's seat of the vehicle with his left arm hanging out of the window until Officer Emberton's interaction with Baker, "the State has failed to establish beyond a reasonable doubt that the engine of the vehicle was running . . . ." Nevertheless, the trial court found that the State presented significant additional evidence to meet its burden of proving beyond a reasonable doubt that Baker drove his vehicle while intoxicated into the center of the intersection of a public road and parked on the evening in question.

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. As used in Chapter 577, "the term 'drive', 'driving', 'operates' or 'operating' means physically driving or operating a motor vehicle." § 577.001.2. Here, then, we must determine whether the State presented sufficient evidence that a reasonable fact finder could find beyond a reasonable doubt that Baker was either driving or operating a motor vehicle and that he did so while intoxicated. *State v. Chambers*, 207 S.W.3d 194, 197 (Mo. App. S.D. 2006). "[T]o sustain a DWI conviction[,] the State must establish, through direct or circumstantial evidence, the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication." *State v. Shoemaker*, 448 S.W.3d 853, 856 (Mo. App. W.D. 2014) (internal quotation omitted). Circumstantial evidence can be used to prove the elements of "driving" and "while" when driving is not personally observed by an eyewitness. *Varnell*, 316 S.W.3d at 516. "Circumstantial evidence means evidence that does not directly prove a fact, but it gives rise to a logical inference that the fact exists." *State v. Putney*, 473 S.W.3d 210, 216 (Mo. App. E.D. 2015).

To sustain a criminal conviction for DWI in cases where the motor vehicle's engine was not running, the State is required to present "significant additional evidence of driving and the

5

connection of driving in an intoxicated state." *Chambers*, 207 S.W.3d at 197 (internal quotation omitted). Examples of this type of "significant additional evidence" as it relates to the "drive" element of the crime includes, but is not limited to: lights inside or outside the vehicle were illuminated; the key was in the ignition; the accused was found behind the steering wheel; the accused was the sole occupant of the vehicle; the vehicle was found in a lane of traffic; and the vehicle was registered to the accused. *Id.* at 198-99; *State v. Karl*, 270 S.W.3d 514, 517 (Mo. App. W.D. 2008); *State v. Thurston*, 84 S.W.3d 536, 538-40 (Mo. App. S.D. 2002). Here, all of these factors were present.

The State presented evidence that the eyewitness who called 9-1-1 at the scene observed Baker's vehicle in the middle of an intersection blocking a lane of traffic. After waiting a brief period of time, the eyewitness drove around the stationary vehicle and saw Baker, the sole occupant of the vehicle, leaned back in the driver's seat with his left arm hanging out the window. When Officer Emberton was dispatched to the scene minutes later, he observed a vehicle parked in the middle of the intersection with the driver's-side door open and Baker's sandals lying on the driver's-side floorboard. The key was in the ignition in the operating position and, although the engine was not running, the headlights and rear lights were still illuminated. Additionally, Officer Emberton confirmed that the vehicle was registered to Baker after he witnessed Baker staggering away from the scene and ultimately falling flat on his face in a nearby yard.

As to the State's burden to present significant evidence from which a fact finder could draw the reasonable conclusion, beyond a reasonable doubt, as to the "while" element of the crime, though a temporal connection between a defendant's intoxication and driving or operating the vehicle must be established, we have previously concluded that a relatively brief period of

6

time from a defendant's erratic driving and his arrest in an intoxicated condition can be sufficient to establish that connection. *See Varnell*, 316 S.W.3d at 516. Refusal to take a breathalyzer test can constitute evidence from which a reasonable inference can be drawn that the driver was intoxicated at the time of the operation of his vehicle. *State v. Royal*, 277 S.W.3d 837, 840 (Mo. App. W.D. 2009). *See also State v. Burks*, 373 S.W.3d 1, 4 (Mo. App. S.D. 2012) (finding sufficient evidence of intoxication included glassy, watery, and bloodshot eyes; strong odor of intoxicants; swaying, staggering, stumbling; admission to drinking; failing field sobriety tests; and refusal to take breathalyzer test); *Karl*, 270 S.W.3d at 518 (defendant's behavior at the scene and after the accident, including refusing all sobriety field tests, is indicative of a driver who had been intoxicated "while" driving).[3]

Here, Officer Emberton arrived at the scene five minutes after dispatch received the eyewitness's 9-1-1 call, placing Baker in the driver's seat of his vehicle and as the sole occupant of his vehicle. When Officer Emberton arrived, he observed Baker attempting to stagger away from his vehicle without his foot apparel (which was later found in the floorboard of the driver's side of his vehicle near the foot pedals). Baker had left his vehicle, with lights illuminated, key in the ignition, and front driver's-side door ajar, in the middle of an intersection reserved for lanes of traffic, and Baker—some twenty-five feet from the vehicle—stumbled and ultimately fell face down in a grassy area adjacent to the public road where he left his vehicle unattended. When Officer Emberton detained Baker, he observed an overpowering odor of intoxicants coming from Baker's person. Baker's eyes were bloodshot and watery; his speech was slurred

---

[3] Baker cites to *State v. Kennedy*, 530 S.W.2d 479 (Mo. App. 1975), but in *Kennedy*, there was no evidence of a temporal connection between intoxication and driving other than a police officer finding the defendant outside his vehicle on the side of the road. *Id.* at 480. No witness had seen the defendant in the vehicle and there was no evidence as to the amount of time defendant had been standing on the side of the road near his vehicle. *Id.* Here, Baker was found seated in the driver's seat of his vehicle that was parked in the middle of a busy intersection where a passerby called 9-1-1 and the duration of time between the initial call and the arrest of Baker in an intoxicated condition was a brief interval. Thus, Baker's reliance upon *Kennedy* is misplaced.

and mumbling; his balance was uncertain, and he was swaying, staggering, stumbling, and falling down. Officer Emberton observed in plain view in Baker's vehicle two open and largely consumed plastic McCormick whiskey bottles. At the scene, Baker refused to take field sobriety tests and was belligerent in refusing to do so. The intersection was a busy one with moderate to heavy traffic such that it is unreasonable to conclude that Baker's vehicle had been parked in the middle of the intersection for very long before a witness called in the irregularity in the roadway. Officer Emberton arrested Baker on suspicion of DWI and transported him to the Blue Springs police station where Baker refused to submit to a chemical breath test.

We conclude that this constitutes sufficient and significant circumstantial evidence for a reasonable trier of fact to find beyond a reasonable doubt that Baker drove or operated his vehicle in temporal connection to his severe intoxication. The trial court could reasonably infer that while Baker was intoxicated he: drove his vehicle into the middle of a busy intersection; stopped his vehicle so as to block a lane of traffic without putting on his flashers (as a reasonable and sober person would do upon having mechanical issues); passed out behind the steering wheel of his vehicle next to his two open McCormick whiskey bottles that he had been consuming in large quantities; was noticed shortly thereafter by another driver in this moderate to heavy traffic intersection who called 9-1-1; awakened shortly thereafter and continued to be so intoxicated that he attempted to stagger away from his vehicle on foot without shoes that he was previously wearing and which were—not so coincidentally—found in the driver's-side floorboard by the foot pedals of his vehicle; fell face first into the grass twenty-five feet from his car; and belligerently refused field sobriety testing or breathalyzer testing.

Accordingly, the trial court did not err in overruling Baker's motion for judgment of acquittal and in finding him guilty of DWI in violation of section 577.010.

## Conclusion

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Chief Judge

Zel M. Fischer, Special Judge, and Gary D. Witt, Judge, concur.