Gary D. Witt, Judge
Richard Wilhite ("Wilhite") appeals his conviction of driving while intoxicated, pursuant to section 577.010[1] , from the Circuit Court of Boone County, Missouri. Wilhite argues that the trial court erred in finding him guilty because there was insufficient evidence to establish a temporal connection between him operating the vehicle and his being intoxicated. We reverse.
Statement of Facts[2]
Wilhite was charged with three counts of Kidnapping, pursuant to section 565.110 and one count of Driving While Intoxicated as a prior and persistent offender. Following a bench trial he was found guilty of the charge of driving while intoxicated and found not guilty of the three counts of kidnapping.[3] On August 25, 2015, at about 10:15 p.m., Tracy Anderson ("Tracy")[4] and her son, Dustin Anderson ("Dustin"), were taking Dustin's fiancé, Samantha Clemens ("Clemens"), to work. They came upon a pick-up truck nose first in a ditch with the back of the truck partially blocking one lane of the roadway. The road did not have a shoulder at this location. The truck lights were on and the driver's side door was open. They pulled over, and Tracy and Dustin got out of their vehicle to see if anyone needed help. They did not initially *143 observe anyone. When they started to leave they heard shouting coming from behind them. Further up the road from the truck they saw Wilhite attempting to crawl out of the ditch. Wilhite appeared intoxicated. He was stumbling, he needed help getting out of the ditch, his speech was slurred, and he had an odor like beer. Tracy and Dustin asked if Wilhite was okay and if anyone else was with him. Wilhite said that he was not hurt and nobody else was with him. Wilhite walked over to Tracy's vehicle and got in the passenger's side without asking permission. Wilhite refused to get out of the vehicle and repeatedly demanded that they drive him home. They finally agreed to give him a ride to his home.
When they got to Wilhite's house, Wilhite stumbled and fell to one knee trying to get out of the Suburban. Dustin helped Wilhite up the stairs to the mobile home, opened the front door, and sat him down on a chair inside. Wilhite asked them to retrieve his truck, even offering to pay them, but they refused. Once they left Wilhite's house, Tracy called 911 and they went back to the accident site and talked with highway patrol officer, Trooper Grant Johnson ("Trooper Johnson"), who had responded to the crash scene in response to Tracy's 911 call.
Trooper Johnson was dispatched to the scene at 10:42 p.m. and arrived at the scene at 10:50 p.m. There was no one at the scene when he arrived. Trooper Johnson found a partially consumed bottle of beer in the center console of the truck and two empty beer bottles on the passenger side floorboard. Tracy, Dustin, and Clemens arrived at the scene and told Trooper Johnson about their earlier interaction with Wilhite and gave Trooper Johnson Wilhite's address. Based on a photograph from the Department of Revenue, Tracy, Dustin and Clemens identified Wilhite as the person they had seen at the scene earlier that evening.
Trooper Johnson and another trooper went to Wilhite's home. Wilhite's fiancé, Phyllis Ward ("Ward") answered the door and stated Wilhite was home. She went back inside the home and came back with Wilhite. When Trooper Johnson made contact with Wilhite, he appeared very impaired and unable to stand. Trooper Johnson asked Wilhite to sit on the steps because he was very unsteady. Wilhite denied being in a crash, drinking any intoxicants that day, or meeting Tracy, Dustin, and Clemens that evening. He said that Ward had been driving. Trooper Johnson was unable to perform the horizontal gaze nystagmus test because Wilhite failed to cooperate and follow the instructions. Trooper Johnson did not request Wilhite perform the walk-and-turn or one-leg stand tests because of Wilhite's inability to maintain a standing position. Wilhite was arrested at 11:40 p.m. and transported to the hospital due to concerns about the level of alcohol in his system. Wilhite refused to provide a blood sample. Trooper Johnson obtained a warrant to draw a sample of Wilhite's blood. The blood draw occurred at 2:47 a.m. The test determined that his blood alcohol level was .129 at that time.
A bench trial was held on August 24, 2016. Wilhite was found guilty of driving while intoxicated as a prior and persistent offender but acquitted of the remaining charges of kidnapping. He was sentenced to eight years in prison. This timely appeal followed.
Standard of Review
In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in jury tried case. Rule 27.01(b); State v. Niederstadt , 66 S.W.3d 12, 13 (Mo. banc 2002). The *144 appellate court's role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt. State v. Johnson , 244 S.W.3d 144, 152 (Mo. banc 2008). We accept as true all evidence and inferences favorable to the State while disregarding all contrary evidence and inferences. Id.
State v. Varnell , 316 S.W.3d 510, 513 (Mo. App. W.D. 2010).
Discussion
Wilhite raises one point on appeal. In his sole point on appeal, Wilhite argues that there is insufficient evidence to convict him of driving while intoxicated because the evidence failed to establish a temporal connection between Wilhite's alleged operation of a motor vehicle and his intoxication.
"The offense of driving while intoxicated, section 577.010.1, requires proof of two elements: (1) that the defendant operated a motor vehicle, and (2) was intoxicated while doing so." State v. Ollison , 236 S.W.3d 66, 68 (Mo. App. W.D. 2007).
Wilhite begins by arguing that there was insufficient evidence to prove that he operated a motor vehicle because no one witnessed him actually driving the truck. However, Wilhite was the only one at the accident scene on the side of a rural roadway and told Tracy that he was the only one in the vehicle. Based on these facts, the trial court could have reasonably inferred he was operating the truck at the time of the accident. There was sufficient circumstantial evidence to establish that he operated the vehicle. See State v. Besendorfer , 439 S.W.3d 831, 836-37 (Mo. App. W.D. 2014) (holding that circumstantial evidence, including Besendorfer admitting he was the only person in the truck when he was found, was sufficient evidence for "a reasonable trier of fact to find beyond a reasonable doubt that Besendorfer had 'operated' his vehicle.").
Wilhite then argues that there was insufficient evidence that he was intoxicated at the time he was operating the truck. "Proof of intoxication at the time of arrest, when remote from the operation of the vehicle, is insufficient in itself to prove intoxication at the time the person was driving." Ollison , 236 S.W.3d at 68. "In this remote circumstance, 'time [is] an element of importance' that the State must establish to meet its burden of proving the defendant drove while intoxicated." State v. Davis , 217 S.W.3d 358, 360 (Mo. App. W.D. 2007) (quoting State v. Dodson , 496 S.W.2d 272, 274 (Mo. App. W.D. 1973) ). " 'Remoteness', as used in drunk driving cases, has two dimensions: remoteness in time from operating a vehicle, and remoteness in distance from the vehicle." State v. Varnell , 316 S.W.3d 510, 514 (Mo. App. W.D. 2010).
When the defendant is arrested at a remote time from the operation of the vehicle, the State must show further evidence than a test that reveals the defendant was intoxicated at the time of arrest. State v. Wilson , 273 S.W.3d 80, 82 (Mo. App. W.D. 2008). "There are two rationales for this requirement, but both have the same foundation: the longer the interval between driving and testing, the less accurately the test reflects the state of the driver at the time of the arrest." Varnell , 316 S.W.3d at 514.
The first reason that an extended time period between driving and testing can result in an inaccurate test is that the defendant may have had time and opportunity to drink alcohol after he ceased driving. Id. The second rationale for requiring additional evidence is based on the manner in which alcohol is processed by the human *145 body. Id. One does not become intoxicated immediately upon the ingestion of alcohol. Davis , 217 S.W.3d at 361. "[A]lcohol must be absorbed into the bloodstream before it affects a person, and it can take thirty to ninety minutes before the maximum blood alcohol level is reached." Varnell , 316 S.W.3d at 514. "[I]t is theoretically possible for a driver who quickly ingests alcohol immediately prior to taking a short drive to be in a sober condition when driving, but, due to process of absorption of alcohol into the bloodstream, to exceed the limit afterwards." Id.
In this case, Wilhite was dropped off at his trailer at approximately 10:30 p.m. and was first contacted by Trooper Johnson at approximately 11:30 p.m. For this at least one hour there was no testimony as to Wilhite's actions or his access to alcohol. Ward was present in the trailer for at least a portion of that time and testified at trial, but the State never inquired as to whether or not Wilhite had access to or consumed any alcohol during that time period. Wilhite was at home for a significant amount of time, giving him ample opportunity to consume alcohol after he drove the truck but prior to his first contact with Trooper Johnson and getting his blood drawn at least three hours later. There was no evidence to establish a correlation between the blood alcohol content reflected in the blood test result and Wilhite's blood alcohol content at the unknown time he last operated the vehicle. However, the lack of a correlation between the test result and the operation of the vehicle is not dispositive of the issues in this case.[5]
Intoxication can be proven by means other than a breath or blood chemical analysis. "Even a lay witness may give an opinion on the intoxication of another person if that testimony is preceded by evidence of conduct and appearance observed by the witness to support the opinion." State v. Barrett, 744 S.W.2d 856, 858 (Mo. App. S.D. 1988). Tracy and Dustin both testified, without objection, to their belief that Wilhite was intoxicated when they observed him prior to his being dropped off at his trailer. They gave extensive testimony as to their observations of Wilhite's conduct and appearance, which would support a fact finder's determination that Wilhite was intoxicated when they first came in contact with him when he came out of the ditch near the scene of the accident. However, this too is not dispositive of the issues in this case.
There was no evidence presented as to how long after the accident Tracy and her family came into contact with Wilhite. There was no evidence provided regarding how much time had elapsed between when Wilhite had operated the vehicle and when Tracy and Dustin observed him in an intoxicated state. See State v. Liebhart, 707 S.W.2d 427 (Mo. App. W.D. 1986) (abrogated on other grounds by Cox v. Dir. of Revenue , 98 S.W.3d 548, 551 (Mo. banc 2003) ) (failure to show the time interval between the accident and the observation of the defendant's intoxication as well as the failure to establish the lack of access to alcohol between those two points in time required reversal of the conviction).
In total the State's evidence established only that Wilhite operated the vehicle, an accident occurred, following an unknown amount of time after the accident he was observed to be intoxicated, and that he was intoxicated when he was arrested several hours later. There is nothing in the record to establish the time that Wilhite was operating the vehicle, the time the accident occurred or at what point Wilhite *146 became intoxicated. "A factfinder cannot determine that 'one who is under the influence of an alcoholic beverage at an established time was necessarily in that condition at some earlier unspecified moment without any evidence concerning the length of the interval' involved." Davis , 217 S.W.3d at 361 (quoting State v. Dodson , 496 S.W.2d 272, 274 (Mo. App. 1973) ). See State v. Block , 798 S.W.2d 213 (Mo. App. W.D. 1990) (Defendant involved in an accident, was located several hours later at his home and even though found to be intoxicated when located at his home this was insufficient to establish he was intoxicated when he was operating the vehicle).
The evidence established that the truck was in the ditch, the headlights were still on, the door was open and Wilhite was approximately 40 feet away from the vehicle when he was first observed by any of the witnesses. There was no evidence as to when the vehicle was last operated. See State v. Wilson , 343 S.W.3d 747, 752 (Mo. App. E.D. 2011) ("Here, where Defendant was found so drunk that he was barely conscious just 30 minutes after he had been seen driving, the jury could reasonably infer that he had been drunk at the time he drove."). There was no evidence that the motor was still running, that the keys were still in the vehicle or that the engine was still warm. See State v. Parr , 754 S.W.2d 921, 922 (Mo. App. E.D. 1988) (holding there was sufficient evidence that Parr had been driving while intoxicated because "the keys were in the ignition in the on position, the alternator and engine lights were on, the headlights were on, and the hood of the car was warm"). There was no evidence that he had no access to alcohol after the accident. See State v. Varnell , 316 S.W.3d 510, 515 (Mo. App. W.D. 2010) (holding that there was sufficient evidence that Varnell was driving while intoxicated since "there were no alcohol containers found in or near the vehicle" and he was in the presence of law enforcement from the time he was removed from the vehicle until the blood sample was drawn). In fact, in this case there were empty beer bottles and one partially consumed beer bottle at the scene of the accident. There is no way to know if this alcohol was consumed before or after the accident. Further, Trooper Johnson did not investigate to see if there were any additional full or empty alcohol containers near the area where the vehicle was located or the area in the ditch, 40 feet from the vehicle, where Wilhite was first observed by Tracy. There was no evidence as to where Wilhite had been prior to the accident or that anyone observed him drinking or intoxicated prior to his operation of the vehicle. See State v. Scholl, 114 S.W.3d 304 (Mo. App. E.D. 2003) (Defendant was seen driving away from a bachelor party in his truck alone and less than thirty minutes later was found a short distance down the road alone in the front seat of the truck, which had struck a tree and deployed the driver-side airbag.)
Further, this case is distinct from our recent decision in State v. Baker , 499 S.W.3d 730 (Mo. App. W.D. 2016). In Baker , a private citizen observed Baker's vehicle in the middle of a busy intersection with Baker alone in the car, leaned back in the driver's seat appearing to be unconscious with his arm hanging out the window. Id. at 734. The citizen called 911 and reported the situation. Id. Officer Emberton arrived on the scene minutes later, where he observed the vehicle parked in the middle of the intersection with the driver's-side door open and Baker's sandals lying on the driver's-side floorboard. Id. The key was in the ignition in the operating position though the engine was not running, and the headlights and rear lights were illuminated. Id. Officer Emberton witnessed Baker staggering away from *147 the scene and falling flat on his face in a nearby yard. Id.
Unlike Baker , where there was an eyewitness who observed Baker alone in the car in the driver's seat five minutes before Officer Emberton arrived, there was no eyewitness that observed Wilhite operating the vehicle prior to the accident or at any point in time. Unlike Baker , no one observed Wilhite exiting the vehicle in an intoxicated state. The facts in Baker that created a temporal connection between Baker operating this vehicle and his severe intoxication, are not present in this case.
Given the absence of evidence to establish the approximate time of Wilhite's operation of the vehicle and his lack of access to alcohol between the operation of the vehicle and the time the witnesses observed his intoxication, the State failed to prove beyond a reasonable doubt that he operated a vehicle while intoxicated. "As we have previously observed, it is the obligation of the State to prove a criminal case beyond a reasonable doubt. It is not the function of the court to ignore its failure." State v. Hatfield, 351 S.W.3d 774, 782 (Mo. App. W.D. 2011) (internal citations and quotation mark omitted).
Wilhite's point on appeal is granted.
Conclusion
The trial court's judgment is reversed and Wilhite is discharged.
All concur

All statutory citations are to RSMo 2016 as supplemented through December 31, 2016, unless otherwise noted.

"We consider the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." State v. Ollison , 236 S.W.3d 66, 68 (Mo. App. W.D. 2007).

The trial court's judgment indicates that the three counts of kidnapping were "dismissed the Ct without prej." However, because the trial court found Wilhite not guilty of these charges following the trial, jeopardy has attached to these counts. Our discussion in this opinion is limited to the one charge on which Wilhite was convicted.

Given that Tracy Anderson and Dustin Anderson have the same last name, we will refer to them by their first names for clarity of reference. No familiarity or disrespect is intended.

Wilhite did not object to and does not challenge the relevance of the evidence of the blood test result based on this passage of time and we do not reach this issue.