

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111607 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| | ) | 21CG-CR00065-01 |
| vs. | ) | |
| | ) | |
| CLIFFORD D. PARRISH, | ) | Honorable Benjamin F. Lewis |
| | ) | |
| Defendant/Appellant. | ) | FILED:  February 27, 2024 |

Before Robert M. Clayton III, P.J., Philip M. Hess, J., and Cristian M. Stevens, J.

OPINION

Clifford D. Parrish ("Defendant") appeals from the judgment upon his conviction following a jury trial for one count of the class C felony of driving while intoxicated, in violation of Section 577.010, RSMo 2000.[1] Defendant argues that insufficient evidence supported the jury's finding that he drove his vehicle while intoxicated, and that the trial court committed plain error by not *sua sponte* intervening in the State's closing argument. We affirm the judgment of the trial court.

Factual and Procedural Background

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

On March 7, 2023, Defendant was charged by amended information with one count of driving while intoxicated for events occurring on or about July 2, 2020. Following a jury trial, Defendant was found guilty of the charged offense. On April 10, 2023, the trial court held a sentencing hearing and thereafter sentenced Defendant to eight years' imprisonment in the Missouri Department of Corrections. Viewed in the light most favorable to the jury verdict,[2] the following evidence was adduced at trial:

At approximately 10 p.m. on July 2, 2020, Officer D.P. of the Jackson Police Department responded to a call reporting a suspicious vehicle parked for "roughly two hours or more" by a recycling center with its headlights on.[3]

Upon arrival at the scene, Officer D.P. observed a red car parked in the middle of the intersection of two streets near the recycling center. Officer D.P. illuminated the inside of the car with his spotlight and saw Defendant slumped over and unconscious in the driver's seat. The car's engine was running, the gear shift was in the park position, and the headlights were on. Defendant was the only person in the car.

When he approached the car, Officer D.P. noted the driver's side window was partially down. He immediately detected an odor of alcohol coming from the car and saw multiple open beer cans on the passenger floorboard, an open beer can in the driver's side door, and a full, open beer can on the passenger seat that was still cold.

---

[2] In determining whether there is sufficient evidence "to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidences and inferences." *State v. Lehman*, 617 S.W.3d 843, 846-47 (Mo. banc 2021).

[3] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

Officer D.P. tapped on the window and awakened Defendant. As Defendant spoke, Officer D.P. detected the odor of alcohol on Defendant's breath. Defendant's speech was slurred, and Defendant appeared to be confused and began to reach under the driver's seat. Officer D.P. asked Defendant to get out of the car. As he was getting out of the car, Defendant stumbled backwards and grabbed on to the car to regain his balance. After Defendant exited the car, Officer D.P. noticed a faint odor of alcohol emanating from the car.

When Officer D.P. asked Defendant why he was in the middle of the intersection, Defendant initially responded that he was talking to his girlfriend. After Officer D.P. informed Defendant he was unconscious when Officer D.P. approached the car, Defendant "changed his answer" and claimed he was looking for his cell phone. Officer D.P. then asked Defendant for his driver's license, but Defendant instead handed Officer D.P. a debit card. After he was informed that the debit card was not a driver's license, Defendant produced a valid driver's license. Officer D.P. then asked Defendant how long he had been parked in the intersection, and Defendant responded that he had been there for "just a couple minutes."

Thereafter, Officer D.P. performed field sobriety tests on Defendant. He found "four out of six clues that [Defendant] was impaired" after performing the horizontal gaze nystagmus test. When Officer D.P. asked Defendant to perform other field sobriety tests, Defendant refused and stated the tests were "unnecessary." Due to Defendant's lack of cooperation and other safety concerns, Officer D.P. ceased performing the standard field sobriety tests. He was able to perform, however, a preliminary breath test on Defendant. Defendant engaged in multiple attempts before correctly blowing into the test and registering a result. The test detected the presence of alcohol.

Officer D.P. determined he had probable cause to believe that Defendant was driving while intoxicated and arrested Defendant. While searching Defendant's pockets incident to arrest, Officer D.P. found a key fob to Defendant's car. The car had a push-to-start button, as opposed to turning a key in the car's ignition.

After taking Defendant to the police station, Officer D.P. observed Defendant for 15 minutes and ensured there was nothing in Defendant's mouth. After this observation period, Defendant consented to a breath test. The test revealed a blood alcohol content of .130, well above the legal limit of .08. Officer D.P. testified that, based on his experience as a police officer and having dealt with many intoxicated people, he believed Defendant was intoxicated.

Defendant testified on his own behalf. He stated he was employed as a cement truck driver. Defendant testified that, on the night of July 2, 2020, he parked his car in the intersection after getting in an argument with his girlfriend. He testified that after he parked the car, his cousin picked him up and they drank alcohol together. According to Defendant, when he returned to his car, he took the alcohol from his cousin's truck and placed it in the car. Defendant further testified that he sat in his car and called his girlfriend to pick him up because he did not feel safe to drive. He stated he sat in his car for eight to ten minutes before police arrived and he told police he had been drinking and was waiting for his girlfriend to pick him up.

On cross-examination, Defendant denied his car was parked in the middle of an intersection and the engine was running while he sat in the car. He also denied being asleep or unconscious when police arrived. He claimed that, when he saw Officer D.P. driving towards him, he got out of the car and was standing outside when the officer approached. Defendant admitted he "had a little trouble in the past" for "a few DWIs" and that he had been drinking on July 2, 2020. One of his convictions for driving while intoxicated was a felony.

4

Defendant filed motions for judgment of acquittal at the close of the State's evidence and again at the close of all evidence. The trial court denied both motions.

During rebuttal closing argument, the prosecutor told the jury, "We can't have [Defendant] driving around on the streets with my wife or your loved ones, especially not a giant concrete truck. He's going to kill somebody. He is going to kill somebody. Find him guilty of driving while intoxicated." There was no objection to the prosecutor's argument.

Discussion

In his two points on appeal, Defendant argues that insufficient evidence supported the jury's finding that he drove his vehicle while intoxicated, and that the trial court plainly erred by not *sua sponte* intervening in the State's closing argument. We deny both points.

*Sufficiency of the Evidence*

In Point I, Defendant argues the trial court erred in denying his motions for judgment of acquittal because there was insufficient evidence from which the jury could find that Defendant operated his vehicle while intoxicated. Defendant is incorrect.

"We review the circuit court's ruling on a motion for judgment of acquittal in a jury-tried case to determine whether the State made a submissible case." *State v. Meador*, 660 S.W.3d 650, 652 (Mo. App. S.D. 2022). "Appellate review is limited to whether, 'in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Knox*, 604 S.W.3d 316, 320 (Mo. banc 2020) (quoting *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014)).

> In determining whether there is sufficient evidence "to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidences and inferences." *State v. Gilmore*, 537 S.W.3d 342, 344

5

(Mo. banc 2018) (alterations omitted), quoting *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015).

*Lehman*, 617 S.W.3d at 846-47 (Mo. banc 2021) (footnote omitted). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." *Id*. at 847 (internal citation omitted). "If that evidence supports equally valid inferences, it is up to the factfinder to determine which inference to believe, as the factfinder is permitted to draw such reasonable inferences from the evidence as the evidence will permit." *Id*. (internal quotation and alterations omitted). Although we may rely on circumstantial evidence, we will not "supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *Id*. (internal quotation omitted). We ask "only whether there was sufficient evidence from which the trier of fact *reasonably* could have found the defendant guilty." *Id*. (internal quotation omitted).

Defendant was charged with driving while intoxicated in violation of Section 577.010. That section provides: "A person commits the crime of driving while intoxicated if he operates a vehicle while in an intoxicated condition." Section 577.010.1. According to the statutory definitions, the terms "drive," "driving," "operates," or "operating" mean "physically driving or operating a vehicle or vessel." Section 577.001(9).

Here, then, we must determine whether the State presented sufficient evidence that a reasonable fact finder could find beyond a reasonable doubt that Defendant was either driving or operating a motor vehicle, and that he did so while intoxicated. *State v. Chambers*, 207 S.W.3d 194, 197 (Mo. App. S.D. 2006). "[T]o sustain a DWI conviction[,] the State must establish, through direct or circumstantial evidence, the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication." *State v. Shoemaker*, 448 S.W.3d 853, 856 (Mo. App. W.D. 2014) (internal quotation omitted).

In a prosecution for driving while intoxicated, circumstantial evidence can be used to prove the elements of "driving" and "while" when driving is not personally observed by an eyewitness. *State v. Baker*, 499 S.W.3d 730, (Mo. App. W.D. 2016); *State v. Varnell*, 316 S.W.3d 510, 516 (Mo. App. W.D. 2010). "Circumstantial evidence means evidence that does not directly prove a fact, but it gives rise to a logical inference that the fact exists." *State v. Putney*, 473 S.W.3d 210, 216 (Mo. App. E.D. 2015). Additionally, the "State is not required to disprove every *possible* theory under which a defendant could be innocent, but instead must present sufficient evidence from which a trier of fact could find the defendant guilty beyond a reasonable doubt." *Varnell*, 316 S.W.3d at 518 (emphasis in original).

In *Cox v. Director of Revenue*, the Supreme Court of Missouri analyzed the terms "driving" and "operating" as used in Section 577.001.2. 98 S.W.3d 548, 550 (Mo. banc 2003).[4] The Court, looking to dictionary definitions, determined "drive" was more narrowly defined as "guid[ing a] vehicle along or through," whereas "operate" was more broadly defined as "to cause to function usually by direct personal effort: work (~ a car)." *Id.*; *see also Chambers*, 207 S.W.3d at 197 (discussing *Cox*). Because the defendant's vehicle was not moving, the issue in *Cox* was not whether the defendant drove his car, but whether he operated his car while intoxicated. The *Cox* Court concluded that "the bright-line test to operate a car [is] caus[ing] its motor to function. Once the key is in the ignition, and the engine is running, an officer may have probable

---

[4] *Cox* involved the administrative revocation of a driver's license based on probable cause to believe the licensee was driving with a blood alcohol concentration above the legal limit. In addition to administrative cases, the Court relied on two criminal cases, *State v. Mitchell*, 77 S.W.3d 637, 641 (Mo. App. W.D. 2002) and *State v. Wiles*, 26 S.W.3d 436, 441 (Mo. App. S.D. 2000), in which defendants challenging their DWI convictions were found to have been operating a vehicle. *Id* at 550-51.

7

cause to believe that the person sitting behind the steering wheel is operating the vehicle[,] even if that person is sleeping or unconscious." *Cox*, 98 S.W.3d at 550.[5]

Here, the evidence presented at trial was sufficient for a reasonable juror to find that Defendant operated the vehicle while intoxicated. The evidence showed that Officer D.P. found Defendant sitting unconscious in the driver's seat of the car in the middle of an intersection, with the key fob in his pocket, the engine running, the gearshift in the park position, the headlights on, and the driver's window partially down. There were multiple open beer cans in the car, one of which was full and still cold. Defendant displayed signs of intoxication, including slurred speech, difficulty keeping his balance, and the odor of alcohol on his breath and in the car. Finally, the breath test established that Defendant's blood alcohol content was .130, well above the legal limit. This evidence meets the *Cox* bright-line test for operating a vehicle while intoxicated.

Still, Defendant seeks to distinguish *Cox* on the basis that Defendant's starting his car using a push-to-start button start is decisively different from operating a car by turning the key in the ignition. Defendant's argument is unpersuasive. As the State points out, Defendant provides no legal authority for his assertion that starting a car with a push-to-start button does not qualify as operating the car. Under the definition of "operate" applied in *Cox* and other cases, a defendant's sitting behind the wheel with the engine running is sufficient for a jury to find the defendant operated the vehicle, without regard to precisely how he started the vehicle. *See Id*.; *State v. Wilson*, 343 S.W.3d 747, 751 (Mo. App. E.D. 2011); *State v. Mitchell*, 203 S.W.3d 246, 252 (Mo. App. S.D. 2006).

---

[5] Numerous cases have applied the *Cox* bright-line test in finding sufficient evidence to support a conviction for driving while intoxicated when the evidence showed that the defendant operated the vehicle. Defendant argues these cases are factually distinguishable from the case at bar. As we shall see, those factual differences do not have the legal significance Defendant suggests.

In any event, the evidence also supports the reasonable inference that Defendant drove the vehicle while intoxicated. Missouri courts have held that the circumstances under which a defendant's vehicle is found and defendant's subsequent behavior may be circumstantial evidence of driving while intoxicated. *See Baker*, 499 S.W.3d at 734-35 (finding sufficient evidence that defendant drove or operated vehicle while intoxicated where defendant parked car in middle of busy intersection, key was in ignition in operating position, vehicle's lights were illuminated, defendant's speech was slurred, defendant was swaying, stumbling, and falling down, and there were two open and consumed bottles of alcohol in car).

In this case, the jury reasonably could have drawn the inference that Defendant parked his car in the intersection, where he was found intoxicated and unconscious in the driver's seat, with the key fob in his pocket, the engine running, the gearshift in the park position, the headlights on, and the window partially down. These facts and the reasonable inferences drawn therefrom amount to sufficient evidence to support a finding that Defendant drove the vehicle while intoxicated. *See Id*.

Point I is denied.

### *Closing Argument*

In Point II, Defendant argues the trial court plainly erred in not *sua sponte* providing a curative instruction or declaring a mistrial when the State improperly personalized its closing argument by arguing that Defendant, if acquitted, posed a direct threat to the safety of the jurors and their families. We disagree.

Defendant did not object to the State's closing argument, nor did he raise any claim regarding closing argument in his motion for new trial. "Only an objection made timely at trial will preserve an issue for appeal." *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc

9

2022) (internal citation omitted). Defendant therefore requests only plain error review under Rule 30.20, which "is the exclusive means by which an appellant can seek review of any unpreserved claim of error[.]" *Id*. at 731 (quoting *State v. Brandolese*, 601 S.W.3d 519, 530 (Mo. banc 2020)).

Plain error review is a two-step process. First, we determine "whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id*. (quoting *Grado v. State*, 559 S.W.3d 888, 899 (Mo. banc 2018)). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id*. (quoting *Id*. at 899). Second, if we find plain error, we must determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id*. (quoting *Id*. at 900). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show 'the error was outcome determinative.'" *State v. Johnson*, 599 S.W.3d 222, 226 (Mo. App. W.D. 2020) (quoting *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019)).

More directly to the point, a trial court has broad discretion in controlling closing arguments. *State v. Reese*, 632 S.W.3d 365, 378 (Mo. App. W.D. 2021). "It has long been held that plain error relief as to closing argument should rarely be granted and is generally denied without explanation." *State v. Hall*, 319 S.W.3d 519, 523 (Mo. App. S.D. 2010) (internal quotation and alteration omitted). Courts are especially hesitant to find plain error in closing argument because counsel's opting not to object is often a matter of trial strategy, and absent an objection and request for relief, "the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Reese*, 632 S.W.3d at 378 (internal quotation omitted).

In closing argument, the prosecutor asserted that, given the evidence of Defendant's driving while intoxicated, Defendant should not be driving on the streets with his wife or the jurors' loved ones. The prosecutor warned, "He is going to kill somebody."

On appeal, Defendant accuses the State of improperly personalizing closing argument for implying that Defendant, if acquitted, posed a direct threat to the safety of the jurors and their families. More specifically, Defendant relies on *State v. Basile*, 942 S.W.2d 342, 352 (Mo. banc 1997), for the proposition that a closing argument is improperly personalized when it suggests that, should the defendant be acquitted, the jurors or their families will be in personal danger. Defendant's argument fails for a variety of reasons.

First, though the State expressed that Defendant should not be driving on the same streets as the prosecutor's wife or the jurors' loved ones, it did not argue that an acquittal of Defendant would be a direct threat to the personal safety of the jurors' families. Rather, the State argued more generally, "He's is going to kill somebody." This was a basic appeal to the jury as the conscience of the community, conveying a danger to society as a whole. *See State v. Roper*, 268 S.W.3d 392, 400 (Mo. App. W.D. 2008) (finding no plain error in closing argument that drugs cause "us to worry about the health and safety of our children;" statement was permissible and phrase "our children" referred to society as a whole).

Even if we were to assume the argument was improper, Defendant has failed to show that the trial court's decision not to *sua sponte* intervene resulted in a manifest injustice and was outcome-determinative. *See Minor*, 648 S.W.3d at 729; *Johnson*, 599 S.W.3d at 226. Where an allegedly improper argument is brief and isolated, there is not a manifest injustice, as the argument will generally not have a decisive effect on a trial's outcome. *See State v. Deck*, 994

11

S.W.2d 527, 544 (Mo. banc 1999). In the instant case, the argument was brief and isolated. It neither resulted in a manifest injustice nor had a decisive effect on the trial's outcome.

Finally, even had Defendant timely objected and requested a mistrial, the trial court would not have erred in refusing that request. Granting a mistrial is a drastic remedy warranted only in extraordinary circumstances. *State v. Byers*, 551 S.W.3d 661, 666 (Mo. App. E.D. 2018). For the reasons explained, such extraordinary circumstances are lacking here.

The trial court did not plainly err in failing to *sua sponte* intervene in the State's closing argument. Point II is denied.

Conclusion

Sufficient evidence supported Defendant's conviction for driving while intoxicated, and the trial court did not commit plain error by failing to *sua sponte* intervene in the State's closing argument. The judgment of the trial court is affirmed.

_____
Cristian M. Stevens, Judge

Robert M. Clayton III, Presiding Judge
 and Philip M. Hess, Judge: concur.